PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>            Plaintiff,<br><br>       v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>            Defendant. | Case No.:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan, Inc. ("Finjan") files this Complaint for Patent Infringement and Jury Demand against Defendant Blue Coat Systems, Inc. ("Defendant" or "Blue Coat") and alleges as follows:

## THE PARTIES

1.    Finjan is a corporation organized and existing under the laws of Delaware, with its principal place of business at 2000 University Ave., Ste. 600, East Palo Alto, California 94303.

2.    Blue Coat is a corporation organized and existing under the laws of Delaware, with its principal place of business at 420 North Mary Avenue, Sunnyvale, California 94085.

## JURISDICTION AND VENUE

3.    This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

5.    This Court has personal jurisdiction over Defendant.  Upon information and belief, Defendant has conducted business in this District and continues to infringe and/or induce the infringement in this District.  Defendant also markets its products primarily in and from this District. In addition, the Court has personal jurisdiction over Defendant because it has established minimum contacts with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

## INTRADISTRICT ASSIGNMENT

6.    Pursuant to Local Rule 3-2(c), Intellectual Property Actions are assigned on a district-wide basis.

## FINJAN'S INNOVATIONS

7.    Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Israeli corporation.  Finjan was a pioneer in developing proactive security technologies capable of detecting previously unknown and emerging online security threats, recognized today under the umbrella of "malware."  These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet.  Finjan has been awarded, and continues to prosecute, numerous patents in the United States and around the world as a result of Finjan's more than decade-long research and development efforts, supported by many inventors.

8.       Finjan built and sold software, including application programming interfaces and appliances for network security, using these patented technologies.  Finjan's licensing partners continue to support these products and customers.  At its height, Finjan employed nearly 150 employees around the world, building and selling security products, while operating the Malicious Code Research Center through which it frequently published research regarding network security and current threats on the Internet.  Finjan's pioneering approach to online security drew equity investments from two major software and technology companies, the first in 2005 and the second in 2006.

9.       Finjan generated millions of dollars in product sales and related services and support revenues through 2009, when it spun off certain hardware and technology assets in a merger.  Pursuant to this merger, Finjan was bound to a non-compete and confidentiality agreement, under which it could not make or sell a competing product or disclose the existence of the non-compete clause.

10.      Finjan became a publicly traded company in June 2013, capitalized with $30 million.  After Finjan's obligations under the non-compete and confidentiality agreement expired in March 2015, Finjan re-entered the development and production sector of secure products for the consumer market.  On June 16, 2015, Finjan introduced its first Finjan Mobile Secure Browser, which offers users security and awareness to keep their data safe while surfing the web on their mobile devices.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

11.     Finjan's commitment to innovation in the security space continues through incubating and investing in up-and-coming technology startups that are pioneering a new generation of security technologies.  Finjan has distributed $1 million of a $5 million commitment to one such startup so far.  Additionally, in June 2015, Finjan announced the expansion of its "Mobile Defense Challenge 2015" for College Students, in which a $40,000 grant will be awarded to develop a winning security application.  Also in June 2015, Finjan launched CybeRisk Security Solutions, a product that provides cybersecurity risk advisory services to customers around the world.

12.     Finjan's founder and original investors are still involved with and invested in the company today, as are a number of other key executives and advisors.  Finjan continues to work with inventors, acquire technology companies, and invest in research laboratories, startups and universities.

13.     On March 18, 2014, U.S. Patent No. 8,677,494 ("the '494 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll and Shlomo Touboul.  A true and correct copy of the '494 Patent is attached to this Complaint as Exhibit A and is incorporated by reference herein.

14.     All rights, title, and interest in the '494 Patent have been assigned to Finjan, who is the sole owner of the '494 Patent.  Finjan has been the sole owner of the '494 Patent since its issuance.

15.     The '494 Patent is generally directed towards computer networks and more particularly provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways in which this is accomplished is by deriving security profiles for content and storing the profiles in a database.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

16.     On October 22, 2013, U.S. Patent No. 8,566,580 ("the '580 Patent"), entitled SPLITTING AN SSL CONNECTION BETWEEN GATEWAYS, was issued to Yuval Ben-Itzhak, Shay Lang and Dmitry Rubinstein.  A true and correct copy of the '580 Patent is attached to this Complaint as Exhibit B and is incorporated by reference herein.

17.     All rights, title, and interest in the '580 Patent have been assigned to Finjan, who is the sole owner of the '580 Patent.  Finjan has been the sole owner of the '580 Patent since its issuance.

18.     The '580 Patent is generally directed towards a system for secure communication. The '580 Patent generally discloses a system which uses an SSL connector to provide secure communication.

19.     On November 28, 2000, U.S. Patent No. 6,154,844 ("the '844 Patent"), entitled SYSTEM AND METHOD FOR ATTACHING A DOWNLOADABLE SECURITY PROFILE TO A DOWNLOADABLE, was issued to Shlomo Touboul and Nachshon Gal.  A true and correct copy of the '844 Patent is attached to this Complaint as Exhibit C and is incorporated by reference herein.

20.     All rights, title, and interest in the '844 Patent have been assigned to Finjan, who is the sole owner of the '844 Patent.  Finjan has been the sole owner of the '844 Patent since its issuance.

21.     The '844 Patent is generally directed towards computer networks, and more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by linking a security profile to such web-based content to facilitate the protection of computers and networks from malicious web-based content or to provide further analysis of potential threats on the Internet.

22.     On November 15, 2005, U.S. Patent No. 6,965,968 ("the '968 Patent"), entitled POLICY-BASED CACHING, was issued to Shlomo Touboul.  A true and correct copy of the '968 Patent is attached to this Complaint as Exhibit D and is incorporated by reference herein.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

23. All rights, title, and interest in the '968 Patent have been assigned to Finjan, who is the sole owner of the '968 Patent. Finjan has been the sole owner of the '968 Patent since its issuance.

24. The '968 Patent is generally directed towards methods and systems for enabling policy-based cache management to determine if digital content is allowable relative to a policy. One of the ways this is accomplished is scanning digital content to derive a content profile and determining whether the digital content is allowable for a policy based on the content profile.

25. On August 26, 2008, U.S. Patent No. 7,418,731 ("the '731 Patent"), entitled METHOD AND SYSTEM FOR CACHING AT SECURE GATEWAYS, was issued to Shlomo Touboul. A true and correct copy of the '731 Patent is attached to this Complaint as Exhibit E and is incorporated by reference herein.

26. All rights, title, and interest in the '731 Patent have been assigned to Finjan, who is the sole owner of the '731 Patent. Finjan has been the sole owner of the '731 Patent since its issuance.

27. The '731 Patent is generally directed towards methods and systems for providing an efficient security system. One of the ways this is accomplished is by implementing a variety of caches to increase performance of the system.

28. On December 13, 2011, U.S. Patent No. 8,079,086 ("the '086 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R Kroll and Shlomo Touboul. A true and correct copy of the '086 Patent is attached to this Complaint as Exhibit F and is incorporated herein.

29. All rights, title, and interest in the '086 Patent have been assigned to Finjan, who is the sole owner of the '086 Patent. Finjan has been the sole owner of the '086 Patent since its issuance.

30. The '086 Patent is generally directed towards computer networks and, more particularly, provides a system that protects devices connected to the Internet from undesirable

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

operations from web-based content. One of the ways this is accomplished is by creating a profile of the web-based content and sending a representation of these profiles to another computer for appropriate action.

31.     On July 17, 2012, U.S. Patent No. 8,225,408 ("the '408 Patent"), entitled METHOD AND SYSTEM FOR ADAPTIVE RULE-BASED CONTENT SCANNERS, was issued to Moshe Rubin, Moshe Matitya, Artem Melnick, Shlomo Touboul, Alexander Yermakov and Amit Shaked.  A true and correct copy of the '408 Patent is attached to this First Supplemental Complaint as Exhibit G and is incorporated by reference herein.

32.     All rights, title, and interest in the '408 Patent have been assigned to Finjan, who is the sole owner of the '408 Patent.  Finjan has been the sole owner of the '408 Patent since its issuance.

33.     The '408 Patent is generally directed towards network security and, in particular, rule based scanning of web-based content for a variety of exploits written in different programming languages.  One of the ways in which this is accomplished is by expressing the exploits as patterns of tokens.  Additionally, the system provides a way to analyze these exploits by using a parse tree.

**BLUE COAT**

34.     Blue Coat makes, uses, sells, offers for sale, and/or imports into the United States and this District its Web Security Service, WebPulse Cloud Service, ProxySG Appliances and Software, Blue Coat Systems SV2800 and SV3800, Malware Analysis Appliances and Software, Security Analytics Platform, Content Analysis System, and Mail Threat Defense, S400-10 and S400-20, which in combination form Blue Coat's Advanced Threat Protection Lifecycle Defense:

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

https://image.slidesharecdn.com/lifecycle-poster-v2-131023233916-phpapp01/95/advanced-threat-protection-lifecycle-infographic-1-1024.jpg?cb=1394539516 (attached as Exhibit H).

35.     The Blue Coat Web Security Service is a family of Blue Coat Cloud Services that provides, without limitation: malware scanning, web and content filtering, real-time advanced threat protection, behavioral analysis, generation of proactive malware defenses and security profiles in response to downloadable files and data received, and secure caching of that data and security profile information. *See* https://www.bluecoat.com/documents/download/3b698df2-62ab-4354-8dce-fc4d7b2cd752/34572c90-898b-4852-8055-c6cec6c64852 (attached as Exhibit I). The Blue Coat Web Security Service also provides policies, such as global settings (basic policy), granular rules (advanced policy) or verdict policy which are efficiently applied in deciding the allowability of content requested by various groups of users:

7

See https://bto.bluecoat.com/sites/default/files/tech_pubs/BCWSSPolicyCookbook.pdf (attached as Exhibit J).



*Id.*

36.     The Blue Coat WebPulse Cloud Service is a cloud-based infrastructure utilizing multiple technologies to analyze content requests and can be used with the ProxySG Appliances and Software and Blue Coat's Web Security Service as shown below:

8



http://www.bluecoat.com/documents/download/d84549c4-05f3-4c64-920c-f48cdccad4ae/4e23e1a8-b292-4aff-9271-e2431918dc0f at 2 (attached as Exhibit K). WebPulse includes Dynamic Real-Time Rating ("DRTR") to analyze unknown content in real-time, including parsing incoming program code for potential exploits. WebPulse capabilities includes more than 20 detection and rating modules that accept web categorization requests from its over 75 million users around the world. *See* Bcs_WebPulse_Tech_Overview_wp_v1b.pdf at 7-8 (attached as Exhibit L); *see also* bcs_ds_Web_Security_Service_EN_v5a.pdf at 1 (attached as Exhibit I); *see also* https://www.bluecoat.com/security/security-archive/2012-04-13/webpulse-nutshell (attached as Exhibit M).

37.    The Blue Coat ProxySG Appliances and Software provide, without limitation, web filtering, data loss prevention, inspection, content caching, bandwidth management, and stream-splitting. The ProxySG Appliances and Software include the ProxySG S200, ProxySG S300, ProxySG S400, ProxySG S500, ProxySG S600, ProxySG S900 and ProxySG S9000. *See*

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.

https://www.bluecoat.com/products/proxysg-secure-web-gateway (attached as Exhibit N).

38.     The Blue Coat ProxySG Appliances and Software enforce network policy utilizing the Blue Coat Policy Processing Engine, the Visual Policy Manager (VPM) and a syntax known as Content Policy Language (CPL). *See* https://bto.bluecoat.com/documentation/All-Documents/ProxySG (attached as Exhibit O); *also see* https://bto.bluecoat.com/sites/default/files/tech_pubs/SGOS%20Administration%20Guide_0.pdf at 62 (attached as Exhibit P).

39.     The Blue Coat ProxySG Appliances and Software are able to cache an object each time a request is received and check its object store for a cached copy. Preventing_Malware_with_Blue_Coat_Proxies.pdf at 7 (attached as Exhibit Q).

40.     The Blue Coat Systems SV2800 and SV3800 are able to enforce policies.  The Blue Coat Systems SV2800 and SV3800 are appliances that provide complete inspection, visibility, and control of SSL-encrypted traffic, allowing a user to add policy-based SSL management capabilities. The Blue Coat Systems SV2800 and SV3800 can be transparent thereby eliminating the need for network reconfiguration, IP addressing or topology changes or modification to client IP and web browser configurations.  *See* https://www.bluecoat.com/documents/download/462306fa-1514-481d-899a-0ad57c59a9e7/3a25e097-3f1a-4de8-b5fd-e42c037af57b (attached as Exhibit R).  SV2800 and SV3800 also support both passive and active appliances as well as in-line and tap modes of operation. *Id.*  They can also preserve applications by delivering decrypted plaintext to security appliances as a generated TCP stream with the packet headers as they were received, thereby allowing applications and appliances, such as NGFW, IDS/IPS, DLP and forensics, to expand their scope and provide protection from previously hidden traffic and potential threats.  *Id.*  Blue Coat's SV2800 and SV3800 can also work in conjunction with Blue Coat's ProxySG Appliances and Software to add, without

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

limitation, data loss prevention, sandboxing, firewall, and intrusion prevention systems with complete visibility into SSL /TLS traffic. *See* https://www.bluecoat.com/products/ssl-visibility-appliance (attached as Exhibit S).



*See* https://bto.bluecoat.com/sites/default/files/tech_pubs/SV2800_SV3800_Admin-Guide._3.7_1.pdf at pg. 76 (attached as Exhibit T)(Describing deploying SSL Visibility Appliance in networks that already have an SSL proxy device in place that is inspecting some of the outgoing SSL traffic using certificate resign. The SSL Visibility Appliance would typically be deployed in order to allow other security appliances to view inspected traffic in addition to the existing proxy device that may not have an ability to pass inspected traffic to other devices).

41. The Blue Coat Malware Analysis Appliances and Software comprise a customizable sandbox solution that provides malware detonation and analysis using a dual-detection approach that combines virtualization and emulation to capture malicious behavior across a wide range of custom environments. The Malware Analysis Appliances and Software generate security profiles for downloadables that include a list of suspicious operations. The Malware Analysis Appliances and Software can also work in conjunction with Blue Coat's WebPulse or Security Analytics Platform to disseminate, store, and implement these profiles. *See* bcs_ds_Malware_Analysis_Appliance_S400_S500_EN_v2f.pdf (attached as Exhibit U).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Malware Analysis Ecosystem

*Id.* at 4.  The Blue Coat Malware Analysis System Appliances and Software include the Malware

Analysis Appliance S400-10 and S500-10.  *Id.* at 3.

42.    The Blue Coat Security Analytics Platform is software that delivers complete visibility

of web traffic within a network and also analyzes, collects, and reports forensic information of

malicious downloadables.  The Blue Coat Security Analytics Platform can work in conjunction with

its Malware Analysis System Appliances and Software and WebPulse to derive and store security

profiles of downloadables.  For example, the Blue Coat Security Analytics Platform automatically

detects, extracts, classifies and brokers suspicious or unknown files in real-time to the Blue Coat

Malware Analysis Appliance for malware detonation and scoring.  *See*

https://www.bluecoat.com/products/security-analytics-platform (attached as Exhibit V); *see also*

bcs_ds_Security_Analytics_Software_EN_v3c.pdf (attached as Exhibit W).

43.     The Blue Coat Content Analysis System is a layered software platform that includes, without limitation, malware scanning, anti-virus, whitelisting and sandboxing technologies.  The Content Analysis System works with its ProxySG and Malware Analysis Appliances and scans incoming content, derives a security profile for the content, and stores that content and related policy in caches.



*See* bcs_ds_Content_Analysis_System_S200_S400_S500_EN_v1a.pdf (attached as Exhibit X).

44.     The Blue Coat Mail Threat Defense is a software platform that protects against threats transmitted by email and includes, without limitation, the ability to scan, inspect, and analyze all incoming downloadables, filter incoming data, sandbox downloadables for behavioral analysis, and generate, apply, and store downloadable security profiles or policies in a cache or database.  The Blue Coat Mail Threat Defense appliance includes the MTD S400-10 and MTD S400-20 products, and can work in conjunction with the Malware Analysis Appliance MAA S400-10 product, as described below:

13

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

*See* bcs_ds_Mail_Threat_Defense_S400_EN_v1h.pdf (attached as Exhibit Y).

## **BLUE COAT'S INFRINGEMENT OF FINJAN'S PATENTS**

45.     Defendant has been and is now infringing the '494 Patent, the '580 Patent, the '086 Patent, the '408 Patent, the '844 Patent, the '968 Patent and the '731 Patent, (collectively "the Patents-In-Suit") in this judicial District, and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the claimed system and methods on the Blue Coat Web Security Service, WebPulse Cloud Service in combination with ProxySG Appliances and Software, Blue Coat Systems SV2800 and SV3800 in combination with ProxySG Appliances and Software, Malware Analysis Appliances and Software in combination with WebPulse or Security Analytics Platform, ProxySG Appliances and Software in combination with Content Analysis System and Malware Analysis Appliances and Software and Mail Threat Defense S400-10 and S400-20 in combination with Malware Analysis Appliances and Software.

14

1

## COUNT I
### (Direct Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(a))

46.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

47.     Defendant has infringed and continues to infringe one or more claims of the '494 Patent in violation of 35 U.S.C. § 271(a).

48.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

49.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

50.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the Blue Coat Web Security Service, WebPulse Service in combination with ProxySG Appliances and Software, Malware Analysis Appliances and Software in combination with WebPulse or Security Analytics Platform and Mail Threat Defense S400-10 or S400-20 in combination with Malware Analysis Appliances and Software, which embody the patented invention of the '494 Patent.

51.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

52.     Defendant's infringement of the '494 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

53.     Defendant has been well aware of the '494 Patent.  On August 28, 2013, Finjan filed a complaint against Defendant for, *inter alia,* infringement of the U.S. Patent Nos. 6,804,780 and

15

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

7,058,822 Patents, that are related to the '494 Patent, based in part on the manufacture, use, sale, importation and/or offer for sale of the Blue Coat ProxySG Appliances and Software. Furthermore, Defendant was on actual notice of the '494 Patent at least as of May 1, 2014 when Finjan and Defendant filed Second Joint Case Management Statement. *See Finjan, Inc. v. Blue Coat Systems, Inc.,* ND. Cal. Case No. 13-cv-03999-BLF, Dkt. No. 58 (Second Joint Case Management Statement & Proposed Order, Appendix B at 1, 3). Finjan also provided Blue Coat the entire file history of the '494 Patent on July 25, 2014. Despite the awareness of the '494 Patent, Defendant continues to manufacture, use, sale, import and/or offer for sale the Blue Coat Web Security Service, the Blue Coat WebPulse Service in combination with ProxySG and the Blue Coat Malware Analysis Appliances and Software in combination with WebPulse or Security Analytics Platform, while Defendant also elected to manufacture, use, sale, import and/or offer for sale the Mail Threat Defense S400-10 or S400-20 in combination with Malware Analysis Appliance S400-10, which embody the patented invention of the '494 Patent, at least as of July 7, 2015. *See* https://www.bluecoat.com/blogs/2015-07-07/securing-agency-email-against-targeted-attacks (attached as Exhibit Z); *see also* https://www.bluecoat.com/documents/download/6c2783ab-7f0c-4ffd-b96a-9345d3723f7e/6fc3b569-eaf1-4d73-93c6-1f6fa8334c88 (attached as Exhibit AA). As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '494 Patent, warranting an award to Finjan of enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II
### (Direct Infringement of the '580 Patent pursuant to 35 U.S.C. § 271(a))

54.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

55.     Defendant has infringed and continues to infringe one or more claims of the '580 Patent in violation of 35 U.S.C. § 271(a).

56.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

57.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

58.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to, the Blue Coat Systems SV2800 and SV3800 in combination with ProxySG Appliances and Software, which embody the patented invention of the '580 Patent.

59.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

60.     Defendant's infringement of the '580 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

61.     Defendant has been well aware of the '580 Patent.  On August 28, 2013, Finjan filed a complaint against Defendant for infringement of six patents out of Finjan's patent portfolio based in part on the manufacture, use, sale, importation and/or offer for sale of various products of Blue Coat.  Furthermore, Defendant was on actual notice of the '580 Patent at least as of May 1, 2014 when Finjan and Defendant filed a Second Joint Case Management Statement.  *See Finjan, Inc. v. Blue Coat Systems, Inc.,* ND. Cal. Case No. 13-cv-03999-BLF, Dkt. No. 58 (Second Joint Case Management Statement & Proposed Order, Appendix B at 3).  Finjan also provided Blue Coat with

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

the entire file history of the '580 Patent on October 7, 2014.  Despite the awareness of the '580 Patent, Defendant continues to manufacture, use, sale, import and/or offer for sale the Blue Coat Systems SV2800 and SV3800 in combination with ProxySG Appliances and Software, which embody the patented invention of the '580.  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '580 Patent, warranting an award to Finjan of enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

### COUNT III
### (Direct Infringement of the '086 Patent pursuant to 35 U.S.C. § 271(a))

62.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

63.    Defendant has infringed and continues to infringe one or more claims of the '086 Patent in violation of 35 U.S.C. § 271(a).

64.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

65.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

66.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to, the Blue Coat Mail Threat Defense S400-10 or S400-20 in combination with Malware Analysis Appliance S400-10, which embody the patented invention of the '086 Patent.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

67.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

68.     Defendant's infringement of the '086 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

69.     Defendant has been well aware of the '086 Patent.  On August 28, 2013, Finjan filed a complaint against Defendant for, *inter alia,* infringement of the U.S. Patent Nos. 7,058,822 and 6,804,780, that are related to the '086 Patent, based in part on the manufacture, use, sale, importation and/or offer for sale of the Blue Coat ProxySG Appliances and Software.  Furthermore, Defendant was on actual notice of the '086 Patent at least as of May 1, 2014 when Finjan and Defendant filed a Second Joint Case Management Statement.  *See Finjan, Inc. v. Blue Coat Systems, Inc.,* ND. Cal. Case No. 13-cv-03999-BLF, Dkt. No. 58 (Second Joint Case Management Statement & Proposed Order, Appendix B at 1, 2).  Finjan also provided Blue Coat on July 25, 2014 with the entire file history of the '086 Patent.  Despite the awareness of the '086 Patent, Defendant elected to manufacture, use, sale, import and/or offer for sale the Blue Coat Mail Threat Defense S400-10 or S400-20 in combination with Malware Analysis Appliance S400-10, which embody the patented invention of the '086, at least as of July 7, 2015.  *See* https://www.bluecoat.com/blogs/2015-07-07/securing-agency-email-against-targeted-attacks (attached as Exhibit Z); *see also* https://www.bluecoat.com/documents/download/6c2783ab-7f0c-4ffd-b96a-9345d3723f7e/6fc3b569-eaf1-4d73-93c6-1f6fa8334c88 (attached as Exhibit AA).  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '086 Patent, warranting an award to Finjan of enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

## COUNT IV
### (Direct Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(a))

70.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

71.     Defendant has infringed and continues to infringe one or more claims of the '408 Patent in violation of 35 U.S.C. § 271(a).

72.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

73.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

74.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to, the Blue Coat Web Security Service, WebPulse in combination with ProxySG Appliances and Software, Mail Threat Defense S400-10 or S400-20 in combination with Malware Analysis Appliance S400-10, which embody the patented invention of the '408 Patent.

75.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

76.     Defendant's infringement of the '408 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

77.     Defendant has been well aware of the '408 Patent.  On August 28, 2013, Finjan filed a complaint against Defendant for, *inter alia,* infringement of the U.S. Patent Nos. 6,804,780, which is related to the '408 Patent, based in part on the manufacture, use, sale, importation and/or offer for

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

sale of the Blue Coat ProxySG Appliances and Software.  Furthermore, Defendant was on actual notice of the '408 Patent at least as of May 1, 2014 when Finjan and Defendant filed a Second Joint Case Management Statement.  *See Finjan, Inc. v. Blue Coat Systems, Inc.,* ND. Cal. Case No. 13-cv-03999-BLF, Dkt. No. 58 (Second Joint Case Management Statement & Proposed Order, Appendix B at 1, 2).  Finjan also provided Blue Coat with the entire file history of the '408 Patent on July 25, 2014.  Despite the awareness of the '408 Patent, Defendant continues to manufacture, use, sale, import and/or offer for sale the Blue Coat Web Security Service and WebPulse in combination with ProxySG Appliances and Software, while Defendant also elected to manufacture, use, sale, import and/or offer for sale the Mail Threat Defense S400-10 and/or S400-20 in combination with Malware Analysis Appliance S400-10, which embody the patented invention of the '408, at least as of July 7, 2015.  *See* https://www.bluecoat.com/blogs/2015-07-07/securing-agency-email-against-targeted-attacks (attached as Exhibit Z); *see also* https://www.bluecoat.com/documents/download/6c2783ab-7f0c-4ffd-b96a-9345d3723f7e/6fc3b569-eaf1-4d73-93c6-1f6fa8334c88 (attached as Exhibit AA).  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '408 Patent, warranting an award to Finjan of enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT V
### (Direct Infringement of the '844 Patent pursuant to 35 U.S.C. § 271(a))

78.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

79.     Defendant has infringed and continues to infringe one or more claims of the '844 Patent in violation of 35 U.S.C. § 271(a).

80.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

21

81.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

82.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the Blue Coat Web Security Service and Mail Threat Defense S400-10 and/or S400-20 in combination with Malware Analysis Appliances and Software, which embody the patented invention of the '844 Patent.

83.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

84.     Defendant's infringement of the '844 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

85.     Defendant has been well aware of the '844 Patent.  On August 28, 2013, Finjan filed a complaint against Defendant for, *inter alia*, infringement of the '844 Patent based in part on the manufacture, use, sale, importation and/or offer for sale of the Blue Coat WebPulse Service. Defendant not only continues to manufacture, use, sale, import and/or offer for sale the same product and the Web Security Service, but also elected to manufacture, use, sale, import and/or offer for sale the Mail Threat Defense S400-10 and/or S400-20 in combination with Malware Analysis Appliances and Software S400-10 at least as of July 7, 2015, which embody the patented invention of the '844. *See* https://www.bluecoat.com/blogs/2015-07-07/securing-agency-email-against-targeted-attacks (attached as Exhibit Z); *see also* https://www.bluecoat.com/documents/download/6c2783ab-7f0c-4ffd-b96a-9345d3723f7e/6fc3b569-eaf1-4d73-93c6-1f6fa8334c88 (attached as Exhibit AA).  As

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '844 Patent, warranting an award to Finjan of enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI
### (Direct Infringement of the '968 Patent pursuant to 35 U.S.C. § 271(a))

86.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

87.     Defendant has infringed and continues to infringe one or more claims of the '968 Patent in violation of 35 U.S.C. § 271(a).

88.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

89.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

90.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the Blue Coat Web Security Service, ProxySG Appliances and Software in combination with Content Analysis System and Malware Analysis Appliances and Software, which embody the patented invention of the '968 Patent.

91.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

92.     Defendant's infringement of the '968 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

93.     Defendant has been well aware of the '968 Patent.  On August 28, 2013, Finjan filed a complaint against Defendant for, *inter alia,* infringement of the '968 Patent based in part on the manufacture, use, sale, importation and/or offer for sale of the Blue Coat WebPulse Service and ProxySG Appliances and Software.  Defendant not only continues to manufacture, use, sale, import and/or offer for sale the same products and the Web Security Service, but also elected to manufacture, use, sale, import and/or offer for sale ProxySG in combination with Content Analysis System and Malware Analysis Appliances and Software well after the filing of the original complaint and the Mail Threat Defense S400-10 and/or S400-20 in combination with Malware Analysis Appliances and Software S400-10 at least as of July 7, 2015, which embody the patented invention of the '968 Patent.  *See* https://www.bluecoat.com/blogs/2015-07-07/securing-agency-email-against-targeted-attacks (attached as Exhibit Z); *see also* https://www.bluecoat.com/documents/download/6c2783ab-7f0c-4ffd-b96a-9345d3723f7e/6fc3b569-eaf1-4d73-93c6-1f6fa8334c88 (attached as Exhibit AA).  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '968 Patent, warranting an award to Finjan of enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

**<u>COUNT VII</u>**
**(Direct Infringement of the '731 Patent pursuant to 35 U.S.C. § 271(a))**

94.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

95.     Defendant has infringed and continues to infringe one or more claims of the '731 Patent in violation of 35 U.S.C. § 271(a).

96.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

97.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

98.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including, but not limited to, the Web Security Service, ProxySG Appliances and Software in combinations with Content Analysis System and Malware Analysis Appliances and Software and the Mail Threat Defense S400-10 and/or S400-20 in combination with Malware Analysis Appliances and Software S400-10, which embody the patented invention of the '731 Patent.

99.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

100.     Defendant's infringement of the '731 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

101.     Defendant has been well aware of the '731 Patent.  On August 28, 2013, Finjan filed a complaint against Defendant for, *inter alia*, infringement of the '731 Patent based in part on the manufacture, use, sale, importation and/or offer for sale of the Blue Coat ProxySG Appliances and Software and WebPulse Service.  Defendant not only continues to manufacture, use, sale, import and/or offer for sale the same products and the Web Security Service, but also elected to manufacture, use, sale, import and/or offer for sale ProxySG in combinations with Content Analysis System and Malware Analysis Appliances and Software well after the filing of the original complaint and the Mail Threat Defense S400-10 and/or S400-20 in combination with Malware Analysis Appliances and Software S400-10 at least as of July 7, 2015, which embody the patented invention of the '731 Patent.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

*See* https://www.bluecoat.com/blogs/2015-07-07/securing-agency-email-against-targeted-attacks (attached as Exhibit Z); *see also* https://www.bluecoat.com/documents/download/6c2783ab-7f0c-4ffd-b96a-9345d3723f7e/6fc3b569-eaf1-4d73-93c6-1f6fa8334c88 (attached as Exhibit AA).  As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '731 Patent, warranting an award to Finjan of enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Finjan prays for judgment and relief as follows:

A.      An entry of judgment holding Defendant has infringed, is infringing the '494 Patent, the '580 Patent, the '086 Patent, the '408 Patent, the '844 Patent, the '968 Patent and the '731 Patent.

B.      A preliminary and permanent injunction against Defendant and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing the '494 Patent, the '580 Patent, the '086 Patent, the '408 Patent, the '844 Patent, the '968 Patent and the '731 Patent and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C.      An award to Finjan of such damages as it shall prove at trial against Defendant that is adequate to fully compensate Finjan for Defendant's infringement of the '494 Patent, the '580 Patent, the '086 Patent, the '408 Patent, the '844 Patent, the '968 Patent and the '731 Patent where said damages shall be no less than a reasonable royalty;

D.      A determination that Defendant's infringement has been willful, wanton, and deliberate and that Finjan is entitled to up to treble damages on this basis;

E.      A finding that this case is "exceptional" and an award to Finjan of its costs and reasonable attorney's fees, as provided by 35 U.S.C. § 285.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Case5:15-cv-03295   Document1   Filed07/15/15   Page28 of 29

F.      An accounting of all infringing sales and revenues, together with postjudgment interest and prejudgment interest from the first date of infringement of the '494 Patent, the '580 Patent, the '086 Patent, the '408 Patent, the '844 Patent, the '968 Patent and the '731 Patent; and

G.      Such further and other relief as the Court may deem proper and just.


Respectfully submitted,


Dated:  July 15, 2015                          By:  */s/ Paul J. Andre*
                                                    Paul J. Andre
                                                    Lisa Kobialka
                                                    James Hannah
                                                    KRAMER LEVIN NAFTALIS
                                                    & FRANKEL LLP
                                                    990 Marsh Road
                                                    Menlo Park, CA 94025
                                                    Telephone: (650) 752-1700
                                                    Facsimile: (650) 752-1800
                                                    pandre@kramerlevin.com
                                                    lkobialka@kramerlevin.com
                                                    jhannah@kramerlevin.com

                                                    *Attorneys for Plaintiff*
                                                    FINJAN, INC.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

### **DEMAND FOR JURY TRIAL**

Finjan demands a jury trial on all issues so triable.

Respectfully submitted,

Dated:  July 15, 2015

By:  */s/ Paul J. Andre*
Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

28