EDWARD G. POPLAWSKI (State Bar No. 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (State Bar No. 228382)
okim@wsgr.com
NEIL N. DESAI
ndesai@wsgr.com (State Bar No. 286405)
GINA H. CREMONA
gcremona@wsgr.com (State Bar No. 305392)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone:  (323) 210-2900
Facsimile:   (866) 974-7329

Counsel for Defendant
BLUE COAT SYSTEMS, INC.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>      Plaintiff,<br><br>   v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>      Defendant. | Case No. 5:15-CV-03295-BLF-HRL<br><br>**BLUE COAT SYSTEMS, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101**<br><br>Date: November 10, 2016<br>Time: 9 a.m.<br>Courtroom 3, 5th Floor<br>Honorable Beth Labson Freeman |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................... - 1 -

I. INTRODUCTION ........................................................................................................... - 1 -

II. STATEMENT OF FACTS.............................................................................................. - 2 -

III. LEGAL STANDARD ..................................................................................................... - 3 -

    A. Motion For Judgment On The Pleadings. ........................................................... - 3 -

    B. Patent Eligibility Under 35 U.S.C. § 101. ........................................................... - 3 -

IV. ARGUMENT .................................................................................................................. - 4 -

    A. Claim Construction Is Not Necessary For Patent Eligibility Analysis For The '494 Patent. .................................................................................................. - 4 -

    B. The '494 Patent Does Not Claim Patent Eligible Subject Matter. ...................... - 5 -

        1. Under *Alice* Step 1, The Asserted Claims Of The '494 Patent Are Directed To An Abstract Idea Of Data Gathering.................................. - 5 -

        2. Under *Alice* Step 2, The Asserted Claims Of The '494 Patent Are Not Patent-Eligible Applications Of The Abstract Idea......................... - 9 -

        3. The Claims Of The '494 Patent Impermissibly Preempt Data Gathering. ............................................................................................... - 12 -

V. CONCLUSION .............................................................................................................. - 13 -

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ........................................................................................... 3, 11

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
    No. 6:15-cv-00029, 2015 U.S. Dist. LEXIS 77411 (W.D. Tex. June 12, 2015) ....................... 5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ........................................................................................................ passim

*Ariosa Diagnostics v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015) ................................................................................................ 12

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
    133 S. Ct. 2107 (2013) ................................................................................................................ 3

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ............................................................................................................... 3, 5

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ................................................................................................ 10

*Content Extraction Transmission LLC v. Wells Fargo Bank.*
    776 F.3d 1343, 1345 (Fed. Cir. 2014) .................................................................................. 7, 10

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
    558 F. App'x 988 (Fed. Cir. 2014) ........................................................................................... 11

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) .................................................................................................. 6

*Digitech Image Technologies., LLC v. Electronics for Imaging, Inc.*,
    758 F.3d 1344, 1350 (Fed. Cir. 2014) ........................................................................................ 8

*Eclipse IP LLC v. McKinley Equip. Corp.*,
    No. CV 14-154-GW, 2014 U.S. Dist. LEXIS 125395 (C.D. Cal. Sept. 4, 2014) ....................... 4

*Elec. Power Group, LLC v. Alstom S.A.*,
    No. 2015-1778, 2016 U.S. App. LEXIS 13861 (Fed. Cir. Aug. 1, 2016) .......................... 6, 7, 10

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) .................................................................................................. 6

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    No. 2015-1202, 2016 WL 1393573 (Fed. Cir. Apr. 8, 2016) ..................................................... 4

*Groundswell Techns., Inc. v. Synapsense Corp.*,
   No. 15-cv-06024-AB, slip op. (C.D. Cal. Apr. 28, 2016) ............................................................ 4

*GT Nexus, Inc. v. Inttra, Inc.*,
   No. C 11-02145-SBA, 2015 WL 6747142 (N.D. Cal. Nov. 5, 2015) ........................................ 11

*Lyon v. Chase Bank USA, N.A.*,
   656 F.3d 877 (9th Cir. 2011) ....................................................................................................... 3

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ...................................................................................................... 8, 9, 12

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   No. 2015-1090, 2016 U.S. App. LEXIS 16703 (Fed. Cir. Sept. 13, 2016) ................................. 6

*Netflix, Inc. v. Rovi Corp.*,
   114 F. Supp. 3d 927 (N.D. Cal. 2015) ................................................................................. 10, 12

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) (J. Mayer concurring) ...................................................... 4, 7, 9

*Open Text v. Alfresco*,
   No. 13-cv-04843-JD, 2014 U.S. Dist. LEXIS 132080 (N.D. Cal. Sept. 19, 2014) ..................... 3

*OpenTV, Inc. v. Apple Inc.*,
   No. 5:15-CV-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) ................................... 11

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
   522 F.3d 1049 (9th Cir. 2008) ..................................................................................................... 3

*Protegrity USA, Inc. v. Netskope, Inc.*,
   No. 15-cv-02515-YGR, 2015 WL 6126599 (N.D. Cal. Oct. 19, 2015) ...................................... 8

*In re TLI Comm'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) .................................................................................................. 6, 9

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .......................................................................................... 5, 8, 10

*Videoshare, LLC v. Google, Inc.*,
   No. 13-cv-0990 (GMS), slip op. (D. Del. Aug. 2, 2016) ................................................ 6, 10, 11

*Whitepages, Inc. v. Isaacs*,
   No. 16-CV-00175, 2016 U.S. Dist. LEXIS 96771 (N.D. Cal. July 25, 2016) ......................... 3, 4

*Wolf v. Capstone Photography, Inc.*,
   No. 2:13-CV-09573-CW, 2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28,
   2014) ............................................................................................................................................ 3

**STATUTES**

35 U.S.C. § 101 ................................................................................................................... *passim*

**RULES**

FED. R. CIV. P. 12(b)(6) .............................................................................................................. 3, 4

FED. R. CIV. P. 12(c) ................................................................................................................... 1, 3

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 10, 2016 at 9 a.m., or as soon thereafter as the matter may be heard by the Honorable Beth Labson Freeman in Courtroom 3, 5th Floor, United States District Court for the Northern District Court of California, 280 South First Street, San Jose, CA, 95113, Defendant Blue Coat Systems, Inc. ("Blue Coat") shall and hereby does move this Court to grant its Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff Finjan, Inc.'s ("Finjan") asserted claims of the U.S. Patent No. 8,677,494 ("the '494 Patent") are invalid under 35 U.S.C. § 101 for lack of patentable subject matter. This Motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all papers and records on file herein, and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

For the reasons set forth in the accompanying memorandum of points and authorities, Blue Coat respectfully requests the Court to enter judgment in favor of Blue Coat because the asserted claims of the '494 Patent are invalid under § 101 for lack of patentable subject matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The asserted claims of the '494 Patent are merely directed to (1) receiving, (2) deriving, and (3) storing data. The Federal Circuit has time and again found such generic computer functions—essentially, data gathering—to be directed to abstract idea and patent ineligible. Furthermore, the use of common receivers, scanners, and managers to receive information and create and store data adds nothing to patent-eligibility because generic physical components do not rescue a patent from ineligibility. Therefore, the asserted claims of the '494 Patent lack "inventive concept" and instead refer to what is simply generic and routine without meaningfully restricting the scope of the patent. Without inventive concept, the '494 Patent is improperly preemptive and claims ineligible subject matter under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

## II.   STATEMENT OF FACTS

The '494 Patent is one of ten patents asserted by Finjan in this case. The '494 Patent is directed to receiving a Downloadable, creating a security profile for the Downloadable, and saving the security profile in a database. Finjan currently asserts claims 1, 10, 14, 15, and 18 of the '494 Patent. Claims 1 and 10 are independent claims; claims 14, 15, 16, and 18 depend on claim 10. (Dkt. 39-1, '494 Patent at 21:19-22:39.)

Independent claims 1 and 10 recite method and system claims, respectively, but in substance are the same:

| '494 Claim 1 | '494 Claim 10 |
| --- | --- |
| A computer-based method, comprising the steps of: | A system for managing Downloadables, comprising: |
| a) *receiving* an incoming Downloadable; | a) a receiver for *receiving* an incoming Downloadable; |
| b) *deriving* security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable; and | b) a Downloadable scanner coupled with said receiver, for *deriving* security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable; and |
| c) *storing* the Downloadable security profile data in a database. | c) a database manager coupled with said Downloadable scanner, for *storing* the Downloadable security profile data in a database. |

Dependent claims 14, 15, 16, and 18 do not meaningfully add to or limit independent claim 10 from which they depend. Dependent claim 14 describes a system as described in claim 10, but adds a requirement wherein the Downloadable includes "program script." Claim 15 requires that the suspicious computer operations include "calls made to an operating system, a file system, a network system, and to memory." Claim 16 requires the Downloadable security profile data to include a "URL from where the Downloadable originated." Claim 18 requires the Downloadable scanner from claim 10 to "comprise[] a disassembler for disassembling the incoming Downloadable."

1  **III.   LEGAL STANDARD**

2      **A.   Motion For Judgment On The Pleadings.**

3       Federal Rule of Civil Procedure 12(c) provides that a motion for judgment on the
4 pleadings may be brought "[a]fter the pleadings are closed—but early enough not to delay trial."
5 *Whitepages, Inc. v. Isaacs*, No. 16-CV-00175, 2016 U.S. Dist. LEXIS 96771, at *7 (N.D. Cal.
6 July 25, 2016). Because a motion for judgment on the pleadings is "functionally identical" to a
7 motion to dismiss, the standard for a Rule 12(c) motion is the same as for a Rule 12(b)(6)
8 motion. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1052 n.1 (9th Cir.
9 2008). "Judgment on the pleadings is proper when, taking all allegations in the pleading as true,
10 the moving party is entitled to judgment as a matter of law." *Lyon v. Chase Bank USA, N.A.*, 656
11 F.3d 877, 883 (9th Cir. 2011). A 12(c) motion is a means to dispose of a case when "all material
12 allegations of fact are admitted in the pleadings and only questions of law remain." *Wolf v.*
13 *Capstone Photography, Inc.*, No. 2:13-CV-09573-CW, 2014 U.S. Dist. LEXIS 156527, at *8
14 (C.D. Cal. Oct. 28, 2014) (citations omitted).

15     **B.   Patent Eligibility Under 35 U.S.C. § 101.**

16       Section 101 provides that "[w]hoever invents or discovers any new and useful process,
17 machine, manufacture, or composition of matter, or any new and useful improvement thereof,
18 may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C.
19 § 101. The Supreme Court in *Alice* has "interpreted § 101 and its predecessors . . . for more than
20 150 years" to "'contain[] an important implicit exception: Laws of nature, natural phenomena,
21 and abstract ideas are not patentable.'" 134 S. Ct. at 2354 (quoting *Ass'n for Molecular*
22 *Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). This issue is a threshold
23 inquiry that courts determine as a matter of law. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010);
24 *Open Text v. Alfresco*, No. 13-cv-04843-JD, 2014 U.S. Dist. LEXIS 132080, at *10 (N.D. Cal.
25 Sept. 19, 2014) (citing *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d
26 1336, 1340-41 (Fed. Cir. 2013) (holding that the § 101 inquiry is a matter of law)).

27

28

## IV. ARGUMENT

### A. Claim Construction Is Not Necessary For Patent Eligibility Analysis For The '494 Patent.

District courts have "broad discretion concerning the appropriate time to address § 101." *Eclipse IP LLC v. McKinley Equip. Corp.*, No. CV 14-154-GW, 2014 U.S. Dist. LEXIS 125395, *15 (C.D. Cal. Sept. 4, 2014). Early resolution is appropriate and practical at the pleadings stage, even if claim construction has not yet occurred: "Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation." *Id.* at *6 (internal quotation marks and citations omitted); *see Genetic Techs. Ltd. v. Merial L.L.C.*, No. 2015-1202, 2016 WL 1393573, at *3 (Fed. Cir. Apr. 8, 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364-65 (Fed. Cir. 2015) ("Accordingly, where, as here, asserted claims are plainly directed to a patent ineligible abstract idea, we have repeatedly sanctioned a district court's decision to dispose of them on the pleadings.") (J. Mayer concurring).

Here, there is no claim construction issue relevant to the eligibility question because the basic character of the '494 Patent is readily ascertainable from the face of the patent. As described herein, the claims are broad and not plainly limited, or even tethered, to the technologies described in the specification. Therefore, although claim construction may be necessary for purposes of an *infringement* analysis at some later stage, it is not necessary in ascertaining the basic character of the '494 patent for purposes of a § 101 analysis now. *See Groundswell Techns., Inc. v. Synapsense Corp.*, No. 15-cv-06024-AB, slip op. at 7 (C.D. Cal. Apr. 28, 2016) ("[T]he '211 Patent concerns the relatively non-technical concepts of sensors, data transmission, and data manipulation, none of which are so 'opaque such that claim construction would be necessary to flush out [their] contours' before determining whether the claims are patent eligible.") (citation omitted); *see also Whitepages*, 2016 U.S. Dist. LEXIS 96771, at *17 (holding that claim construction was not necessary because plaintiff has "neither

explained how any particular construction would alter the section 101 analysis, nor proposed any constructions that might be viewed in a favorable light given the posture of this motion"). Indeed, Finjan did not propose any claim terms of the '494 Patent for construction. (*See generally* Dkt. 79, Joint Claim Construction and Pre-hearing Statement.)[1] Accordingly, the issue of patent eligibility under § 101 is properly before this Court for adjudication at this time.

### B.  The '494 Patent Does Not Claim Patent Eligible Subject Matter.

The '494 Patent (i) broadly claims and preempts the abstract idea of creating and storing a security profile, (ii) only teaches doing so by using generic and conventional technology, and (iii) fails to provide the details necessary to provide any meaningful limiting principles to the claims. Accordingly, the Court should hold the asserted claims of the '494 Patent invalid and unenforceable because they are directed to patent–ineligible subject matter.

#### 1.  Under *Alice* Step 1, The Asserted Claims Of The '494 Patent Are Directed To An Abstract Idea Of Data Gathering.

The *Alice* Court set forth a two-step framework to determine patent eligibility. First, courts "determine whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea. 134 S. Ct. at 2355. The abstract ideas category is open-ended, but it includes a "fundamental economic practice long prevalent in our system of commerce," a "longstanding commercial practice," and "a method of organizing human activity." *Id.* at 2356 (citing *Bilski*, 561 U.S. at 611, 619). To approach step 1, "the court must identify the purpose of the claim—in other words, determine what the claimed invention is trying to achieve—and ask whether that purpose is abstract." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, No. 6:15-cv-00029, 2015 U.S. Dist. LEXIS 77411, at *18 (W.D. Tex. June 12, 2015) (citation omitted). An idea is impermissibly abstract when it is "devoid of a concrete or tangible application." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

---

[1] In addition, the parties have agreed to the definition of generic computer terms—"database" and "Downloadable"—found in the '494 Patent. The parties agreed that the term "database" means "a collection of interrelated data organized according to a database schema to serve on or more applications" and that the term "Downloadable" means "an executable application program, which is downloaded from a source computer and run on the destination computer." (Dkt. 79 at 1.)

1    In computer-related technologies, the Federal Circuit recently clarified that a relevant
2 question to ask at the first step of the *Alice* analysis is "whether the claims in these patents focus
3 on a specific means or method that improves the relevant technology or are instead directed to a
4 result or effect that itself is the abstract idea and merely invoke generic processes and
5 machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.,* No. 2015-1090, 2016 U.S. App.
6 LEXIS 16703, *28 (Fed. Cir. Sept. 13, 2016); *see also Elec. Power Group, LLC v. Alstom S.A.*,
7 No. 2015-1778, 2016 U.S. App. LEXIS 13861, *6-7 (Fed. Cir. Aug. 1, 2016).  Claims directed to
8 an improvement in computer functionality can be contrasted with those that (1) "simply add[]
9 conventional computer components to well-known business practices;" (2) "use . . . an abstract
10 mathematical formula on any general purpose computer;" (3) recite "a purely conventional
11 computer implementation of a mathematical formula;" or ( 4) recite "generalized steps to be
12 performed on a computer using conventional computer activity." *In re TLI Comm'ns LLC*
13 *Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (citing *Enfish, LLC v. Microsoft Corp.*, 822
14 F.3d 1327, 1338 (Fed. Cir. 2016)) (collecting cases).

15    Here, the claims are directed to an abstract idea because they are not directed to an
16 improvement in computer functionality, and the physical components of the claim merely
17 provide a generic environment for carrying out the abstract idea.  As described above, the '494
18 Patent claims reduce to three general conceptual elements: (1) ***receiving*** downloadable content;
19 (2) ***deriving*** a security profile for the downloaded content; and (3) ***storing*** the profile in a
20 database.  All of these tasks do nothing more than perform conventional computer activities of
21 receiving information, identifying certain characteristics of the information, and then storing
22 those characteristics, *i.e*. data gathering.  The specification does not identify any specific
23 algorithm or software code that improves how a computer would perform any of these generic
24 data collecting activities.  Further, the physical components in claim 10, "receiver," "scanner,"
25 and "database manager," only provide a generic environment for carrying out the abstract idea of
26 creating and storing a security profile.  *See Videoshare, LLC v. Google, Inc*., No. 13-cv-0990
27 (GMS), slip op. at 13-14 (D. Del. Aug. 2, 2016); *see also CyberSource Corp. v. Retail Decisions,*
28

*Inc.*, 654 F.3d 1366, 1365 (Fed. Cir. 2011) ("the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium.").

The Federal Circuit has consistently held that the concepts of receiving, creating/deriving, and storing are abstract ideas. In *Content Extraction Transmission LLC v. Wells Fargo Bank*, the claim at issue recited "(a) receiving output representing a diversity of types of hard copy documents . . ."; "(b) recognizing portions of said hard copy documents . . ."; and "(c) storing information from said portions of said hard copy documents . . ." 776 F.3d 1343, 1345 (Fed. Cir. 2014). The Federal Circuit determined that "[t]he concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Id*. at 1347. The Federal Circuit further explained that the concept has been performed by banks for a long time: "banks have . . . reviewed checks, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records." *Id.*

This analogy is equally applicable to the claims of the '494 Patent. For example, the '494 Patent can be analogized to screening incoming packages in an office mailroom. First, a screener receives a package in the mailroom and opens the package. Second, upon opening the package, the screener takes note of who/where the package came from; who/where the package is going to; and what is contained inside the package. Third, the information is recorded by hand in a notebook or log that is stored in a filing cabinet for future access. This analogy reiterates that the '494 Patent is directed to the basic idea of data gathering, which consistently has been held as an abstract idea. *See, e.g., Elec. Power,* 2016 U.S. App. LEXIS 13861, *7-8 ("Information as such is intangible . . . [a]ccordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.") (internal citations omitted); *OIP Techs*., 788 F.3d at 1361 (holding as abstract complex data gathering and calculations steps including "(1) testing a plurality of prices; (2) gathering statistics generated about how customers reacted to the

offers testing the prices; (3) using that data to estimate outcomes (i.e. mapping the demand curve over time for a given product); and (4) automatically selecting and offering a new price based on the estimated outcome."); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297-98 (2012) (holding as abstract claims directed at data gathering in the context of administering a drug by determining metabolite levels in the blood).

Furthermore, the concept of deriving a security profile has been found to be an abstract idea. In *Digitech Image Technologies., LLC v. Electronics for Imaging, Inc.,* the asserted claims described "a process for generating a device profile." 758 F.3d 1344, 1350 (Fed. Cir. 2014). The Federal Circuit found the claims patent-ineligible because they recited the "abstract process of gathering and combing data" to generate a device profile. *Id*. at 1351. In *Protegrity USA, Inc. v. Netskope, Inc.*, this Court found that the claims covering methods for defining and applying "intrusion detection policies" for database requests were invalid as embodying a patent-ineligible abstract idea. No. 15-cv-02515-YGR, 2015 WL 6126599, at *6 (N.D. Cal. Oct. 19, 2015). The Court reasoned that "such methods—absent the generic reference to a 'database'—substantially predate modern computers, arising in contexts such as physical security and access policies regarding a variety of sensitive information housed in filing rooms or warehouses." *Id*.

Similarly, the concept of a security profile predates modern computers, since it can simply be observing suspicious behavior and remembering for future reference. Although claims 1 and 10 describe the security profile as "including a list of suspicious computer operations that may be attempted by the Downloadable," such degree of particularity does not change the claims' abstract concept of receiving information and storing characteristics of that information. *Ultramercial*, 772 F.3d at 715 ("Although certain additional limitations . . . add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea").

Accordingly, the asserted claims of the '494 Patent are directed to an unpatentable abstract idea, and consequently fails the first analytical step of *Alice*.

### 2. Under *Alice* Step 2, The Asserted Claims Of The '494 Patent Are Not Patent-Eligible Applications Of The Abstract Idea.

If the claims are directed to a patent-ineligible abstract idea, courts move on to the second step of the test. A patent must contain an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357-58 (quoting *Mayo*, 132 S. Ct. at 1294). In determining whether the claims possess an inventive concept, the elements of a claim must be considered both individually and as an ordered combination. *Id.* at 2355. As the Supreme Court held in *Alice*, "a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358. Nor can adding "well-understood, routine, conventional activities previously known to the industry;" limiting an idea to a particular field of use or a particular technological environment; adding data-gathering steps; or adding any other token post- or extra-solution activity (meaning steps incidental to solving the core problem the claim addresses). *Id.* at 2357-59 (internal quotations omitted).

The '494 Patent claims do not add any "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357. Claim 1 recites a "computer-based method," "receiving," "deriving," "computer," "operations," "storing," and "database." All of the aforementioned computers, capabilities, and functions are well-understood, routine, and conventional activities, and the claim fails to recite any features that go beyond such conventional activities. *See TLI Comm'ns*, 823 F.3d at 613 (examining the specification for meaning of claim terms such as "telephone unit," "server," "image analysis unit," and "control unit," and concluding that all of the components "behave exactly as expected according to their ordinary use."); *OIP Techs. Inc.*, 788 F.3d at 1361 (holding additional claim limitations such as sending a first set of electronic messages over a network to devices, devices being "programmed to communicate, storing test results in a machine-readable medium, and using a computerized system . . . to automatically determine" did not change the outcome because all of these functions are well-understood, routine, conventional activities previously known to the industry).

Taking each element in turn, there is nothing inventive about "receiving an incoming

1  Downloadable" because downloading is a basic function of Internet-connected computers. *See*
2  *Ultramercial*, 772 F.3d at 716. Next, as described above, the abstract idea of "deriving security
3  profile data for the Downloadable" consists of the routine computer function of extracting
4  information. *See Videoshare,* No. 13-cv-0990 (GMS), at 18 ("[A]t the time of the invention,
5  general purpose computers regularly received transmissions, ***extracted information from***
6  ***messages***, determined file formats, stored files in memory, and provided files to be accessed over
7  a network.") (emphasis added); *see also Elec. Power*, 2016 U.S. App. LEXIS 13861, *10
8  ("[M]erely selecting information, by content or source, for collection, analysis, and display does
9  nothing significant to differentiate a process from ordinary mental processes, whose implicit
10 exclusion from § 101 undergirds the information-based category of abstract ideas."). Lastly,
11 storing information in a generic database is also a common computer function and therefore does
12 not add an inventive concept to transform the abstract idea of creating and storing a security
13 profile. *See Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 946-47 (N.D. Cal. 2015) ("A
14 'database' is no different from a generic computer, and as before, the addition of function
15 descriptors does not turn a generic database into something more particular."). Thus, whether
16 considered individually or taken together as an ordered combination, the claim elements fail to
17 transform the claimed abstract idea into a patent-eligible application.
18         Similarly, the system elements of claim 10 do not add any "inventive concept" to the
19 abstract idea of creating and storing security profiles. In particular, claim 10 includes the generic
20 components of a "receiver," "scanner," and "manager." These generic devices have repeatedly
21 been held insufficient to transform an abstract idea to patent-eligible subject matter. *See*
22 *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("The computers in *Alice*
23 were receiving and sending information over networks connecting the intermediary to the other
24 institutions involved, and the Court found the claimed role of the computers insufficient."); *see*
25 *also Content Extraction*, 776 F.3d at 1348 ("CET's claims merely recite the use of this existing
26 scanning and processing technology to recognize and store data from specific data fields such as
27 amounts, addresses, and dates. . . . There is no 'inventive concept' in CET's use of a generic
28

scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry."); *OpenTV, Inc. v. Apple Inc.*, No. 5:15-CV-02008-EJD, 2016 WL 344845, at *8 (N.D. Cal. Jan. 28, 2016) (holding that implementation through the use of a generic computer and conventional industry components to store user information and deliver and Entitlement Management Message to the user several minutes faster does not constitute an inventive step); *see GT Nexus, Inc. v. Inttra, Inc.*, No. C 11-02145-SBA, 2015 WL 6747142, at *6 (N.D. Cal. Nov. 5, 2015) ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.").

Lastly, the dependent claims also fail to provide any inventive concept to the abstract idea of creating and storing security profiles. Claim 14 requires that the Downloadable includes generic and conventional "program scripts." Further, claim 15 broadly describes that "suspicious computer operations include calls made to an operating system, a file system, a network system, and to memory." All these operations would be typically expected from executable code downloaded from the Internet. Claim 16 recites that the security profile data include a URL of where the Downloadable originated. Again, there is nothing inventive about including the source or web location of incoming information when creating a security profile. *See, e.g.*, *Videoshare*, No. 13-cv-0990 (GMS), slip op. at 20 ("Specifically, the dependent claims recite additional conventional features, such as 'upload form,' 'wireless networking connection,' 'URL,' and 'plurality of computing devices,' that do not render the claims non-abstract when considered alone or as an ordered combination."). Claim 18 states the "Downloadable scanner comprises a disassembler for disassembling the incoming Downloadable." Disassembling is another common computer function and nothing in the claims or specification suggests otherwise. There is nothing in these dependent claims that would "narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,* 558 F. App'x 988, 992 (Fed. Cir. 2014) (quoting *Accenture Global Servs., GmbH v. Guidewire Software, Inc.,* 728 F.3d 1336, 1341 (Fed.

Cir. 2013)).

Accordingly, the asserted claims do not recite anything "significantly more" that would transform the abstract idea to patent-eligible subject matter.  Blue Coat is entitled to judgment as a matter of law because all asserted claims fail the *Alice* test.

### 3. The Claims Of The '494 Patent Impermissibly Preempt Data Gathering.

While "questions on preemption are inherent in and resolved by the § 101 analysis," *Ariosa Diagnostics v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015), further analysis is warranted to emphasize why this Court should hold the '494 Patent invalid.  The '494 Patent prevents the use of a basic building block of technology—the abstract idea of creating and storing security profiles, *i.e.* data gathering.  The concern that "patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity" is very real in this case.  *Id*. (quoting *Alice*, 134 S. Ct. at 2354).   If the '494 Patent were to stand, it would completely preempt the basic notion of data gathering.  *See*, *e.g.*, *Netflix,* 114 F. Supp. 3d at 940 (holding that none of the elements in the dependent claims of the asserted patents show an unconventional embodiment of the abstract idea, thereby effectively preempting every application of the idea of "using combination categories to categorize programs").

The purpose of the "inventive concept" test is to determine whether the patentee has added something to the claims to limit their scope, so that they do not monopolize the entire abstract idea to which the claims are directed.  *Netflix,* 114 F. Supp. 3d at 936.  This purpose is consistent with § 101's carve-outs for abstract ideas, laws of nature, and physical phenomena, which "ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Id.* at 937 (quoting *Alice*, 134 S. Ct. at 2355).  Thus, the requirement of an "inventive concept" enables the courts to heed the Supreme Court's warning against "'upholding patents that claim processes too broadly and preempt the use of an ineligible concept, such as an abstract idea.'"  *Id*. (quoting *Mayo*, 132 S. Ct. at 1294).  Because the asserted claims of the '494 Patent are devoid of an inventive concept, the scope of the claims is

unrestricted and it impermissibly covers the entirety of an abstract idea. The '494 Patent therefore is invalid and unenforceable under § 101.

## V. CONCLUSION

For the foregoing reasons, Blue Coat respectfully requests the Court to grant its Motion for Judgment on the Pleadings for lack of patent eligible subject matter under § 101.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

DATED:  September 16, 2016        By: _/s/ Olivia M. Kim_____
EDWARD G. POPLAWSKI
OLIVIA M. KIM
NEIL N. DESAI
GINA H. CREMONA

Counsel for Defendant
BLUE COAT SYSTEMS, INC.