UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BLUE COAT SYSTEMS, LLC,<br><br>　　　　Defendant. | Case No. 15-cv-03295-BLF<br><br>**ORDER DENYING FINJAN'S MOTION FOR A PRELIMINARY INJUNCTION** |

Plaintiff Finjan, Inc. ("Finjan") seeks a preliminary injunction to prevent Defendant Blue Coat Systems, LLC ("Blue Coat") from making, using, offering to sell, or selling within the United States, or importing into the United States, the Dynamic Real-Time Rating component ("DRTR") of Blue Coat's WebPulse product due to the alleged infringement of claims 10, 16, and 18 of U.S. Patent No. 8,677,494 (the "'494 patent"). For the reasons set forth below, the Court DENIES Finjan's motion.

**I.　BACKGROUND**

Finjan owns a large portfolio of computer security patents, which it has vigorously defended in patent infringement actions across this district and others. Although, at its founding, Finjan produced and sold its own computer security products, it suspended its product offering activities in 2009 as a result of a merger agreement with M86 Security (subsequently acquired by Trustwave, which was subsequently acquired by Singtel). *See* Exh. 51 to Mot. at 292:12-301:25, ECF 71-56. Since then, one of Finjan's "core businesses" has been licensing its patented technology. Mot. 19. Finjan has "entered into a number of licenses for its patents" to date and is "in active discussions with over twenty other companies related to negotiations for a license to its patents." Hartstein Decl. ¶ 4, ECF 71-2. Recently, however, Finjan's business has diversified. In

March 2015, Finjan's agreement to suspend product development expired and it resumed product development activities. Exh. 51 to Mot. at 286:23-290:11, ECF 71-56. Since then, it has released Finjan Mobile Secure Brower, which it offers for free on the iOS App Store and Google Play. Exh. G to Opp., ECF 112-12; *see also* Opp. 5, ECF 112.

Finjan owns the '494 patent, which is entitled "Malicious Mobile Code Runtime Monitoring System and Methods." The '494 patent was filed on November 7, 2011 and issued on March 18, 2014. However, it is subject to a terminal disclaimer pursuant to 35 U.S.C. § 154(b), which limits its term to that of U.S. Patent No. 6,167,520 (the "'520 patent"), set to expire on January 29, 2017. The '494 patent claims a method and system for managing potentially malicious "Downloadables," which involve receiving a Downloadable, building security profile data for the Downloadable, and storing the profile in a database. '494 patent, col. 21 ll. 19-25, col. 22 ll. 8-17. Security profile data can include, among other things, a list of suspicious computer operations that may be attempted by the Downloadable. *Id*., col. 18 l. 56-col. 19 l. 2, col. 21 ll. 22-23, col. 22 ll. 13-14. Independent claim 10 recites:

> 10. A system for managing Downloadables, comprising:
> a receiver for receiving an incoming Downloadable;
> a Downloadable scanner coupled with said receiver, for deriving security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable; and
> a database manager coupled with said Downloadable scanner, for storing the Downloadable security profile data in a database.

*Id*., col. 22 ll. 8-17. Claim 16 additionally requires that the security profile data include a URL. *Id*., col. 22 ll. 31-34. Claim 18 adds that the Downloadable scanner comprise a disassembler. *Id*., col. 22 ll. 37-39.

Blue Coat is a technology company that offers internet security products and services to consumers and enterprise companies. One of its products, WebPulse, is a cloud-based infrastructure that categorizes web pages and runs background processes, "some of which look for evidence of malware activity." Runald Decl. ¶¶ 3-4, ECF 111-7. WebPulse contains a real-time content analyzer called the Dynamic Real-Time Rating component ("DRTR"), which it uses to categorize previously-undiscovered websites and collect relevant metadata. Exh. 9 to Mot. at 4,

ECF 71-13. WebPulse operates as part of Blue Coat's Global Intelligence Network ("GIN"), which "offers real-time rating of new content, identification of new applications and deployment of new defenses across the global infrastructure." Exh. B to Opp. at 1, ECF 112-7. GIN is available to Blue Coat's customers worldwide, and is hosted on eight different data centers across the globe. Runald Decl. ¶ 3, ECF 111-7.

Blue Coat also offers protection for mobile devices through its Mobile Device Security ("MDS") product. MDS is not a stand-alone product, but is instead offered as a part of Blue Coats's larger Web Security product suite, which must be purchased for a price. Exh. C to Opp. at 2, ECF 112-8.

The parties in this dispute are neither unfamiliar with each other nor this Court. On August 28, 2013, Finjan initiated a first patent infringement action, Case No. 5:13-CV-03999-BLF ("*Finjan I*"), against Blue Coat, alleging that Blue Coat infringed U.S. Patent Nos. 6,154,844 (the "'844 patent"); 6,965,968 (the "'968 patent"); 7,418,731 (the "'731 patent"); 6,804,780 (the "'780 patent"), 7,058,822 (the "'822 patent"), and 7,647,633 (the "'663 patent"). The parties tried all six patents before a jury who, on August 4, 2015, found that Blue Coat infringed the '844, '968,'731, '633, and '780 patents and awarded Finjan a total of $39,528,487 in lump-sum damages. *Finjan I*, ECF 438 at 2-3, 6-7. $24 million of the jury's award was for Blue Coat's infringement of the '844 patent, which the jury found to be infringed by the same DRTR component that Finjan currently seeks to enjoin. *Id*. at 2. The Court entered final judgment on July 18, 2016. *Finjan I*, ECF 556.

On July 7, 2015, five days before the beginning of trial in *Finjan I*, Finjan initiated the instant suit, asserting the '844, '968, '731, and '494 patents, as well as six others. ECF 1. Ten days after the court entered final judgment in *Finjan I* (and approximately one year after it filed suit), on July 28, 2016, Finjan filed the instant motion, seeking to enjoin Blue Coat's alleged infringement of the '494 patent through the DRTR component. ECF 71. Finjan noticed the hearing date for November 10, 2016 and did not seek relief on an accelerated schedule. *Id*.

## II. LEGAL STANDARD

"A preliminary injunction is a 'drastic and extraordinary remedy that is not to be routinely granted.'" *National Steel Car, Ltd. v. Canadian P. Ry., Ltd*., 357 F.3d 1319, 1324 (Fed. Cir. 2004)

(quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)). It "is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). As such, the basic function of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

A party seeking a preliminary injunction must show: "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm if the injunction is not granted; (3) the balance of hardships weighs in its favor; and (4) an injunction is in the public interest." *Apple v. Samsung*, 695 F.3d 1370, 1373-74 (Fed. Cir. 2012) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

## III. DISCUSSION

The Court looks to each of the four *Winter* factors to determine whether Finjan has met its moving burden. The Court finds for the reasons below that Finjan fails to establish at least two of the four elements, rendering a preliminary injunction inappropriate.

### A. Likelihood of Success on the Merits

For the purposes of this motion, Finjan accuses Blue Coat of infringing claims 10, 16, and 18 of the '494 patent through its DRTR component. Its technical expert, Dr. Eric Cole, provided a detailed declaration setting forth how every element of each of the asserted claims appears in DRTR. Cole Decl. ¶¶ 38–80, ECF 70-5. In response, Blue Coat submitted a detailed declaration from its own technical expert, Dr. Azer Bestavros, describing how claims 10 and 16 are not infringed by DRTR. Bestavros Decl. ¶¶ 38–50, ECF 111-5. Blue Coat also argues that Finjan's claims are barred by several of its affirmative defenses and that the '494 patent is invalid. The Court addresses each of these issues in turn.

#### i. Infringement

To prevail on infringement, Finjan must show that the DRTR component "meets every

4

claim limitation either literally or under the doctrine of equivalents." *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005). Neither party contends that any of the terms of the '494 require construction, so, for the purposes of this analysis, the Court gives all claim terms their ordinary meaning. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("[T]he words of a claim are generally given their ordinary and customary meaning.") (internal quotations omitted).

After considering the evidence, the Court finds that there is a high likelihood that Finjan will prevail in showing that DRTR infringes independent claim 10. In *Finjan I*, the jury found that DRTR infringed claim 1 of the '844 patent, and claim 10 only differs from claim 1 in its final two limitations. It seems likely that DRTR satisfies both. With respect to the second to last limitation, which recites "a Downloadable scanner coupled with said receiver, for deriving security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable," the Court is persuaded by Dr. Cole's detailed description of how certain scanning modules within the DRTR identify suspicious operations and derive security profile data. Cole Decl. ¶¶ 55-59, ECF 70-5. Blue Coat, through Dr. Bestavros, responds that the identified "security profile data" does not actually contain a listing of suspicious computer operations, Bestavros Decl. ¶¶ 40-41, ECF 111-5, but, given that DRTR appears to use computer operations in assessing security risk, it seems likely that Finjan will be able to prove this element at least under the doctrine of equivalents, if not literally. With respect to the last limitation, which recites "storing the Downloadable security profile data in a database," the Court is persuaded by Dr. Cole's identification of several databases which DRTR uses to store the results of its analyses. Cole Decl. ¶¶ 61-66, ECF 70-5. Blue Coat responds that certain of the identified databases do not actually store what Dr. Cole identifies as the alleged "security profile data," Bestavros Decl. ¶¶ 47-48, ECF 111-5, but Blue Coat does not appear to dispute the more general point that there are databases that store the security profiling data it collects. Accordingly, at the very least, there appears to be a substantial question as to whether DRTR practices this limitation. Taken as a whole, Finjan's chances of proving that Blue Coat infringes claim 10 at trial seem high.

There is also a high likelihood that Blue Coat infringes the dependent claims. With respect

to claim 16, WebPulse keeps track of the security ratings that it assigns to URLs, so it seems likely that Finjan will be able to identify "Downloadable security profile data" that "includes a URL from where the Downloadable originated." *See* Cole Decl. ¶¶ 67-73, ECF 70-5.  Blue Coat does not appear to disagree that claim 18's additional limitation is infringed by DRTR, so it also seems likely that Finjan will prevail in proving that this claim is infringed.

In sum, the Court agrees with Finjan that there is a high likelihood that it will prevail on infringement.

### ii. Affirmative Defenses

Blue Coat nevertheless argues that Finjan's claims are barred by several of its affirmative defenses: res judicata, its assertion that Finjan has already been fully compensated for infringement in *Finjan I*, and patent misuse.  These arguments do not seem persuasive.  As an initial matter, Blue Coat's assertion that Finjan has already been fully compensated is only a bar to the damages that Finjan may be able to recover in this case.  It does not, however, diminish Finjan's chances of prevailing on infringement.  Accordingly, it does not impact the Court's consideration of likelihood of success here.

With respect to Blue Coat's remaining defenses, res judicata and patent misuse, the Court notes that these defenses are currently no longer part of this case, as it has granted Finjan's motion to strike them with leave to amend.  ECF 140.  However, even if Blue Coat amends its Answer to allege these defenses with the particularly required by Federal Rule of Civil Procedure 8(b), the Court is not persuaded that either of these defenses would diminish Finjan's chances of prevailing. The '494 patent was not asserted in *Finjan I*, and, because "[e]ach patent asserted raises an independent and distinct cause of action," *Kearns v. General Motors Corp.*, 94 F.3d 1553, 1555-57 (Fed. Cir. 1996), res judicata would not likely bar Finjan's ability to sue Blue Coat on this patent. This is particularly true for the '494 patent because it issued during the pendency of *Finjan I*; thus, it was not possible for Finjan to include these claims in its first action.  *See id*. ("A possible basis for barring the different suit is that the causes of action should have been litigated together.").  In addition, because the '494 patent imparts new and separate property rights to Finjan, it seems unlikely that Finjan's assertion of this patent could be deemed "misuse" of the

patents asserted in *Finjan I*. Finjan is merely asserting the rights imparted by the '494 patent grant, not attempting to "impermissibly broaden[] the physical or temporal scope of the patent grant" for the patents asserted in *Finjan I*. *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010). Accordingly, Finjan's likelihood of prevailing on the merits is not diminished by Blue Coat's affirmative defenses.

### iii. Validity

Blue Coat also argues that the '494 patent is invalid. At trial, Blue Coat will bear the burden of overcoming the statutory presumption of validity with clear and convincing evidence. At this stage, however, the Court need "not resolve the validity question, but rather must . . . make an assessment of the persuasiveness of [Blue Coat's evidence]" recognizing that further evidence favoring either side may be presented at trial. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). The Federal Circuit directs the Court to "first weigh the evidence both for and against validity" as available at the preliminary injunction stage, then to assess whether there is a "substantial question" concerning the validity of the patent, "meaning that the alleged infringer has presented an invalidity defense that the patentee has not shown lacks substantial merit . . . ." *Id*. at 1379.

The only evidence of invalidity that Blue Coat offers[1] is that (1) the Patent Trial and Appeal Board ("PTAB") has instituted *inter partes* review ("IPR") for claim 10, Exhs. Ex. M & N to Opp., ECF 112-18 & 112-19; and (2) Blue Coat has requested further IPR of claims 16 and 18 (among others) Exh. O to Opp., ECF 112-20. As an initial matter, the fact that Blue Coat has unilaterally requested IPR does not mean that its request is meritorious. So, without more, the Court is not persuaded that there is a "substantial question" concerning the validity of claims 16 and 18. With respect to claim 10, the fact that IPR has been instituted may indicate that there is a

---

[1] The Court notes that Blue Coat additionally alleges that the '494 patent invalid because it is not directed to patent-eligible subject matter pursuant to 35U.S.C § 101. Blue Coat has filed a motion for judgment on the pleadings on this issue, ECF 104, and the Court's decision is forthcoming. At this stage, the Court takes no position on this motion. Although granting this motion would eviscerate Finjan's likelihood of success on the merits, the Court need not reach this issue to decide the instant motion because, as discussed below, even if Finjan has a high likelihood of success on the merits, a preliminary injunction is inappropriate here.

7

1  "substantial question" concerning validity, *id*. at 1379, since, by statute, IPR may be instituted if
2  "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the
3  claims challenged in the petition." 35 U.S.C. § 314(a). However, only one of the references upon
4  which IPR has been instituted (the Swimmer reference) is named in Blue Coat's invalidity
5  contentions, and Finjan, in its motion, identified several reasons why Swimmer does not anticipate
6  or render obvious the '494 patent, and Blue Coat did not specifically rebut these. *Compare* Mot.
7  15-16, ECF 71, *with* Opp. at 10-11, ECF 112. Moreover, the '494 patent was examined by
8  another court in this district in *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-1197-WHO, and the Court
9  determined that the '494 patent was not invalid. *Id*., ECF 407. Accordingly, on balance, it seems
10 unlikely that there is a "substantial question" regarding the validity of the '494 patent.

11 In sum, because Finjan is likely to succeed in showing that the '494 patent is infringed and
12 Blue Coat is unlikely to succeed in its affirmative defenses or showing the '494 patent is invalid (§
13 101 issues aside), Finjan's likelihood of success is high.

14 **B.  Irreparable Harm**

15 However, even though it seems likely that Finjan will prevail on the merits, other *eBay*
16 factors counsel against granting a preliminary injunction. In addition to success on the merits, a
17 plaintiff seeking a preliminary injunction "must make a clear showing that it is at risk of
18 irreparable harm, which entails showing a likelihood of substantial and immediate irreparable
19 injury." *Apple Inc.*, 695 F.3d at 1374. In addition, in patent cases, a patentee must establish that
20 "a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Id*.

21 Finjan has failed to make this showing. The Court acknowledges, that, as owner of the
22 '494 patent, Finjan possesses the right to exclude others from practicing that invention.
23 Infringement of one's patent right is injury, and the Court appreciates that Finjan has diligently
24 sought to enforce its rights in the '494 patent. Nevertheless, the Federal Circuit has made clear
25 that, under *eBay*, "the patentee's right to exclude alone cannot justify an injunction." *Robert*
26 *Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). Even though, prior to
27 *eBay*, it was presumed that continuing infringement would result in irreparable harm if there was a
28 strong showing of likelihood of success on the merits, this presumption no longer exists. *Id*.

Now, courts must consider the right to exclude along with other evidence of injury and assess whether, in general, there is irreparable harm. *See id.*

In its briefing, Finjan advances several theories of irreparable harm: First, Finjan argues that Blue Coat's alleged infringement is causing irreparable harm because Finjan and Blue Coat are direct competitors, both as manufacturers of mobile security products (Finjan's Mobile Secure Browser and Blue Coat's MDS, respectively) and as licensors of technology. Mot. 17-18, ECF 71. Second, Finjan argues that the companies are indirect competitors because Finjan's licensees and technology successor (Trustwave/Singtel) directly compete with Blue Coat. Mot. 19, ECF 71. Finally, Finjan argues that Blue Coat's infringement has harmed its goodwill and reputation because Blue Coat is misrepresenting Finjan's innovations as its own. Mot. 19, ECF, 71.

None of these theories is persuasive. With respect to direct competition, although the Federal Circuit has recognized that "[d]irect competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude," *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012), such is not the case here. First, Finjan does not directly compete with Blue Coat in the mobile security product space. Finjan's Mobile Secure Browser is a free mobile application that consumers can download from the iOS App Store and Google Play. Exh. G to Opp., ECF 112-12; *see also* Opp. 5. By contrast, Blue Coat's MDS is a mobile application targeted towards enterprise customers that is only available to those who have purchased its Web Security product suite. Exh. C to Opp. at 12, ECF 112-8. On their face, the products seem to operate in different segments of the market. Moreover, Finjan has not presented evidence that its Mobile Secure Browser has lost (or is unable to gain) market share because customers have instead chosen Blue Coat's MDS. Accordingly, Finjan cannot be said to directly compete with Blue Coat in the mobile security market.

Second, Blue Coat and Finjan do not directly compete as technology licensors. Like the mobile security space, it appears that, in the licensing space, the companies operate in separate spheres: Blue Coat sells licenses to its anti-malware engines, Exh. 50 to Mot. at 2, ECF 71-55, while Finjan sells licenses to its patents. Finjan presents no evidence that any prospective

licensees have declined a license to Finjan's patents because they have purchased a license to Blue Coat's anti-malware services instead. As such, there does not seem to be any direct competition between Finjan and Blue Coat in the licensing market.

With respect to indirect competition, although it appears that Finjan and Blue Coat do indirectly compete through Finjan's licensees and technology successor (a point which Blue Coat does not appear to dispute), Finjan has not concretely shown that it stands to suffer immediate irreparable harm. As an initial matter, the Federal Circuit has made clear that "[n]othing in *eBay* eliminates the requirement that the party seeking a permanent injunction must show that *it* has suffered an irreparable injury." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008) (internal quotation marks and citation omitted) (emphasis added). Thus, harm sustained by Finjan's licensees or technology successor is not relevant to the irreparable harm inquiry. That said, harm sustained by Finjan as a result of the impact of Blue Coat's alleged infringement on these companies is relevant. *See, e.g.*, *Robert Bosch*, 659 F.3d at 1153-54 (finding irreparable harm based on indirect competition through mass merchandisers, automotive specialty retailers, and original equipment manufacturers); *Mytee Prod., Inc. v. Harris Research*, Inc., 439 F. App'x 882, 888 (Fed. Cir. 2011) (finding irreparable harm based on indirect competition through franchisees). On this point, Finjan argues that Blue Coat's infringement has undermined the value of the licenses it offers because this value depends on whether licensees would get an advantage over their competitors by having a license. Mot. 19, ECF 71; Reply 12, ECF 125. However, Finjan has not offered any specific evidence that the value of its patents have declined (e.g., potential licensees have been less willing to pay the same price for license) as a result of Blue Coat's alleged infringement. Moreover, this argument overlooks the fact that, regardless of whether Finjan's licenses offer technological advantages over the competition, prospective licensees would still be motivated to purchase a license to avoid costly litigation. Accordingly, this theory is speculative at best.

With respect to reputation and goodwill, the Court also finds that the alleged harm to Finjan is speculative. Finjan asserts that "Blue Coat is misrepresenting Finjan's innovations as its own," Mot. 19, ECF 71; however, Finjan provides no evidence that Blue Coat's alleged

10

misrepresentation has actually *hurt* its reputation by, for example, causing consumers to think that Finjan's technology is of lower quality. Although the Federal Circuit has recognized that the association of one's technologies with less innovative companies can harm one's reputation as an innovator, *see, e.g.*, *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013), Finjan presents only high-level assertions, not specific evidence, that such is the case here. Further, developments in Finjan's financing seem to only reflect the fact that Blue Coat has not yet paid damages from *Finjan I*, not loss of reputation or goodwill in the market. Accordingly, Finjan has not sufficiently demonstrated that it stands to suffer immediate, irreparable harm to either its reputation or goodwill.

Taken together, Finjan's arguments that it will suffer irreparable harm are speculative at best. This is not enough to justify the extraordinary relief of a preliminary injunction. In addition, several other considerations counsel against finding irreparable harm in this case:

First, Finjan has a long history of granting non-exclusive licenses to it patents. As the Federal Circuit has recognized, "the irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). For example, "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Id*. Prospective harm that can already be priced is not. Accordingly, when a patentee demonstrates a willingness to license patented technology on a nonexclusive basis, courts have considered this a factor against finding irreparable harm because the patentee has shown itself "willing to forgo its patent rights for compensation," which means that "any injury suffered . . . would be compensable in damages assessed as part of the final judgment in the case." *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995); *see also Celgard, LLC v. LG Chem, Ltd.*, 624 F. App'x 748, 753 (Fed. Cir. 2015) (affirming denial of a preliminary injunction where patentee admitted that "in the past, it licensed [the accused infringer] to perform the same coating process that it now accuses of infringement").

Such is the case here. In its own words, one of Finjan's "core businesses since the late 1990s is licensing its technology." Mot. 19, ECF 71. The '494 patent is part of this business. To

11

date, Finjan has granted licenses for the '494 patent to 12 companies, and has engaged in discussions with many more. Opp. 19, ECF 112. Accordingly, it cannot be said that Blue Coat's practicing the '494 patent harms Finjan in a way that could not be prospectively priced. Moreover, Finjan has already demonstrated an ability to quantify the value of its '494 patent rights with respect to Blue Coat, as it offered to license the '494 patent to Blue Coat during settlement negotiations and, according to Finjan's corporate witness, the offer is still open. Exh. J to Opp. at 81:11-12, ECF 111-11; Hrg. Tr. at 10:23-11:7, 40:17-41:4, ECF 139. The Court appreciates that a party's willingness to make a settlement offer does not mean that all prospective harm is quantifiable. However, the facts that Finjan still stands willing to license the '494 patent and has a proven track record of doing so with other companies makes it highly unlikely that Finjan is not able to quantify prospective harm in this case. This weighs heavily against finding irreparable harm.

Second, Finjan waited nearly one year after it filed this lawsuit to seek a preliminary injunction. Although some delay in seeking injunctive relief may be reasonable while a party investigates its infringement claims, Finjan's lack of urgency at least suggests that the status quo was not so damaging that it feared immediate, irreparable injury. *See High Tech Medical Instrumentation, Inc.*, 49 F.3d at 1557 ("Absent a good explanation, not offered or found here, 17 months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief."); *Nutrition 21 v. U.S.*, 930 F.2d 867, 872 (Fed. Cir. 1991) ("[D]elay[] for a substantial period of time before seeking a preliminary injunction at least suggests that the status quo does not irreparably damage . . . ."). Moreover, the '494 patent is set to expire on January 29, 2017, a mere two and half months from the date that Finjan noticed the hearing for this motion. Finjan was well aware of the court's calendar when it filed its motion in July 2016, and it did not seek relief on an accelerated schedule, which could have multiplied the lifespan of this injunction by two or more. It seems incongruous to find that alleged infringement during the final two months of this patent would cause irreparable harm when Finjan's actions suggest that alleged infringement during two or more months preceding that period would not. This further weighs against finding irreparable

harm.

Finally, even if this Court were to find that Finjan stands to suffer irreparable injury, it has not sufficiently demonstrated that a "sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc.*, 695 F.3d at 1374. In order to meet this burden, Finjan needs to show that DRTR in particular drives customer demand for WebPulse, a multi-component product, such that DRTR is the particular cause of the irreparable harm it alleges. The only evidence that Finjan points to is the testimony of its own corporate witness—not Blue Coat's—describing the importance of the '494 patented features. Reply 13, ECF 125 (citing Ex. 2 to Reply at 178:13-179:9, 189:24-193:6, ECF 124-8). Finjan points to no customer surveys, market evidence, or admissions from Blue Coat regarding the relationship of DRTR to customer demand. Further, Finjan also has not adequately explained how DRTR specifically causes the irreparable harms it alleges (e.g., inhibited performance in the mobile security market, inhibited performance in the licensing market, or loss of reputation or goodwill). Accordingly, Finjan has failed to satisfy the causal nexus requirement here. For that reason as well, its allegations of irreparable harm fail.

In sum, because Finjan's theories of irreparable harm are speculative at best, Finjan's licensing practices and delay in seeking injunctive relief suggest that prospective harm is not truly irreparable, and Finjan has not satisfied the causal nexus requirement, Finjan has not demonstrated that it is likely to suffer irreparable harm if the injunction is not granted.

### C.     Balance of Hardships

The balance of hardships also weighs against granting a preliminary injunction. As discussed above, the '494 patent is set to expire on January 29, 2017. Accordingly, the harm that Finjan stands to suffer is simply two months of alleged infringement by Blue Coat. Finjan argues that these actions will "hamper [its] growth and expertise in the security field," including its ability to get "fair value" for its patents, Mot. 24, ECF 71, but, as discussed above, Finjan has not specifically shown how Blue Coat's infringement has hurt its performance in the marketplace. Accordingly, the hardship that it stands to suffer from a denial of a preliminary injunction seems speculative and short-lived at best.

In contrast, the hardship that Blue Coat would suffer if an injunction were to issue may potentially be substantial. WebPulse and its DRTR component operate on eight Blue Coat data centers stationed around the globe, and currently serve thousands of businesses worldwide. Runald Decl. ¶¶ 3, 5, ECF 111-7. It seems likely that any fix that would be required to bring Blue Coat within compliance of an injunction would need to be deployed to each. Blue Coat and Finjan disagree as to how costly and how extensive this fix would need to be. Finjan argues that the fix would be cheap, requiring only a narrow change in code. Mot. 23, ECF 71. Blue Coat responds that Finjan's injunction sweeps broader and would require more costly and extensive changes. Opp. 23, ECF 112. The Court is not in a position to evaluate the merit of these competing positions. However, it suffices to say that, for a two month period, technological disruption— even if small—does not seem worth it. For this reason, the balance of hardships weighs against granting an injunction.

### D.  Public Interest

The public interest factor does not affect the outcome in this case. While it is true that "[t]he public is best served by enforcing patents that are likely valid and infringed," *Abbott Labs v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006), this principle is not without limit. The Supreme Court has directed that each of the factors in the traditional four-factor test must be separately analyzed. *See eBay*, 547 U.S. at 391-94. If the public interest in protecting patent rights were a sufficient basis for granting an injunction, "then a patentee would be entitled to an injunction any time a patent is found to be valid and infringed." *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d 1284, 1339 (S.D. Cal. 2010), *aff'd in part, vacated in part*, 702 F.3d 1351 (Fed. Cir. 2012). This cannot be correct. Further, it seems likely that granting an injunction here could work a small disservice to the public because it would deprive the public of DRTR's real-time content analysis services, a technology that Blue Coat offers but Finjan does not. While it is likely that Blue Coat is not the only software company to offer this kind of service, it would hurt the public to restrict its choice in solutions. Accordingly, this weakens the relative strength of the public interest in protecting patent rights in this case.

### E. Conclusion

Accordingly, even though it appears that that Finjan is likely to succeed in showing that the '494 patent is valid and infringed, it has not carried its burden in demonstrating that it is likely to suffer irreparable harm or that the balance of hardships weighs in its favor. For these reasons, the court DENIES Finjan's motion for a preliminary injunction.

**IT IS SO ORDERED.**

Dated: November 22, 2016

_____
BETH LABSON FREEMAN
United States District Judge