E-filed 2/2/2017

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> BLUE COAT SYSTEMS, LLC, <br><br> Defendant. | Case No.15-cv-03295-BLF   (HRL) <br><br> **ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS** <br><br> Re: Dkt. No. 89 |

Defendant Blue Coat Systems, Inc. ("Blue Coat") moves to strike Plaintiff Finjan, Inc.'s ("Finjan") Patent Local Rule 3-1 Infringement Contentions Regarding U.S. Patent Nos. 6,154,844 (the '844 Patent), 6,956,968 (the '968 Patent), and 7,418,731 (the '731 Patent) (together, the "three patents"). For the following reasons, the court grants Blue Coat's motion in part and denies it in part.

## BACKGROUND

This is the second suit between these two parties, both players in the cybersecurity industry, involving these three patents. In 2013, Finjan sued Blue Coat, accusing the latter's products of infringing six of its patents. 5:13-cv-03999-BLF, Dkt. No. 1, ¶ 37. During the prior case ("*Blue Coat I*"), Finjan sought leave to amend its infringement contentions to assert certain of its patents against additional Blue Coat products (specifically, Content Analysis System ("CAS"), Malware Analysis Appliance ("MAA"), and WebPulse Service ("WebPulse")). The court granted leave for Finjan to amend its infringement contentions with respect to asserting the '731 patent against CAS, but denied it with respect to most of Finjan's requested amendments. 5:13-cv-03999-BLF, Dkt. No. 116. The court's denial of leave to amend was justified on the grounds that Finjan had failed to identify any new or recently discovered nonpublic information about the products to support its amendments. Finjan, the court stated, had thus not demonstrated the

diligence needed to establish good cause to amend.[1]  *Id*.  *Blue Coat I* went to trial and ended in a judgment in favor of Finjan, with the jury finding that Blue Coat had infringed five of the six patents asserted.  5:13-cv-03999-BLJ, Dkt. Nos. 487, 556.

Five days before the trial in *Blue Coat I*, Finjan filed the present action.  Dkt. No. 1.  In its Patent Local Rule 3-1 infringement contentions,[2] Finjan accuses Blue Coat's products of infringing ten patents, including the three patents at issue in the present motion.  Finjan's infringement contentions related to the three patents are presented in the following table:[3]

| Patent | Accused Products |
|---|---|
| '844 | WebPulse |
| | Web Security Service |
| | Advanced Security Gateway with the MAA or Security Analytics |
| | ProxySG and CAS with MAA or Security Analytics |
| | Mail Threat Defense with the MAA or Security Analytics |
| '968 | Web Security Service |
| | Advanced Security Gateway with the MAA |
| | ProxySG and CAS with MAA |
| '731 | Web Security Service |
| | Advanced Security Gateway with the MAA or Security Analytics |
| | ProxySG and CAS with MAA or Security Analytics |
| | Mail Threat Defense with the MAA or Security Analytics |

Blue Coat now moves to strike Finjan's infringement contentions with respect to the three patents.  Blue Coat asserts that "all of the products accused for [the three] Patents were either directly accused in [*Blue Coat I*] or the accused functionalities of the accused products were well-known to Finjan . . . ."  Dkt. No. 89, at 4.  Several of the products currently accused were directly accused in *Blue Coat I* or were the subject of Finjan's denied request to amend its infringement contentions there.  Other products, Blue Coat asserts, are "essentially the same" as products

---

[1] Amendments to infringement contentions are only permitted for "good cause."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006).  In the Northern District, good cause "require[s] a showing that the party seeking leave to amend acted with diligence in promptly moving to amend when new evidence is revealed in discovery."  *Id.* at 1363.
[2] Patent Local Rule 3-1 states that infringement contentions must contain statements of each claim of each patent in suit that is allegedly infringed.  For each asserted claim, the contentions must contain each accused "apparatus, product, device, process, method, act, or other instrumentality . . . of each opposing party of which the party is aware."  Patent L.R. 3-1(b).
[3] Dkt. No. 107, at 4-5.

2

accused in *Blue Coat I*, in that Finjan only accuses functionalities that were the subject of the prior case.[4] *Id.* at 5-8. Blue Coat argues that Finjan's contentions should be stricken because (1) they represent a collateral attack on the court's order in *Blue Coat I* denying leave to amend Finjan's infringement contentions, and (2) the accused products are "the same or essentially the same" as the accused products in *Blue Coat I*, and so res judicata should apply to preclude these claims. *Id.* at 9.

Finjan responds that its infringement contentions, for the most part, accuse products and functionalities that "did not exist" when Finjan asserted its infringement contentions in *Blue Coat I*. Dkt. No. 106, at 1. For the other contentions—those which Finjan sought to include in *Blue Coat I*—Finjan asserts that the order denying leave to amend did not bar Finjan from pursuing those claims in a separate action. *Id.*

Counsel for the parties appeared before the court for a hearing on this motion on November 15, 2016.

## DISCUSSION

The Federal Rules of Civil Procedure provide that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are intended to enable the court and the parties to "avoid the

---

[4] Blue Coat summarizes its arguments regarding the relationships between its products and the accusations against them in the following table (Dkt. No. 89, at 16):

| The '844, '731, and '968 Patents | | | | |
|---|---|---|---|---|
| **Case 1 Accused Products** | **Case 2 Accused Products** | | | |
| ProxySG | ProxySG | Advanced Security Gateway | | Mail Threat Defense ("MTD") (only MAA and CAS functions accused) |
| Content Analysis System ("CAS") | Content Analysis System ("CAS") | | | |
| Malware Analysis Appliances ("MAA") | Malware Analysis Appliances ("MAA") | | | |
| WebPulse Service | WebPulse Service | Global Intelligence Network | Web Security Service | |
| MailThreat BLADE | Security Analytics | | | |
| WebThreat BLADE | | | | |
| FileThreat BLADE | | | | |

3

expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Townshend v. Rockwell Int'l Corp.*, No. C99-0400SBA, 2000 WL 433505, at *4 (N.D. Cal., Mar. 28, 2000) (quoting *Sidney-Vinstein v. A.H. Robbins, Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). Motions to strike should only be granted "if it is clear that the matter to be stricken can have no possible bearing upon the subject matter of the litigation." *Id.*

Blue Coat essentially has two arguments supporting its motion to strike: that the current infringement contentions are an impermissible collateral attack on the court's order denying Finjan leave to amend its infringement contentions in *Blue Coat I*, and that Finjan is precluded from asserting the three patents against Blue Coat's products because the products are essentially the same as those accused in *Blue Coat I*. The court addresses the impermissible collateral attack argument first.

A party may not use a second action to reverse a decision in a prior action. *Glitsch, Inc. v. Koch Eng'g Co.*, 216 F.3d 1382, 1384 (Fed. Cir. 2000). "When a court enters an order that a party does not like, the party's recourse is to seek relief on appeal; it is not appropriate for the party to contest the court's order by filing a new action . . . challenging the court's ruling in the first case." *Id.*

The parties cite two competing lines of cases discussing the prohibition on impermissible collateral attacks. In the first, favored by Blue Coat, courts have held that subsequent actions represented impermissible collateral attacks on orders in prior actions that were still ongoing. For example, in *Icon-IP PTY Ltd. v. Specialized Bicycle Components, Inc.* ["*Icon II*"], the court held that a party's infringement contentions against new bicycle seat models were an impermissible collateral attack on the court's denial of leave to amend the infringement contentions in *Icon I* to include those new models. No. 13-cv-03677-JST, 2013 WL 10448869, at *1-2 (N.D. Cal., Oct. 22, 2013). The court noted that, if it had allowed the second action to continue, it would likely have had to consolidate it with the first action, and this consolidation would have "negated, and essentially reversed" the *Icon I* order. *Id.* at *2.

In the line of cases favored by Finjan, courts held that prior court orders denying leave to amend infringement contentions did not preclude separate future actions alleging the same

4

infringement contentions where the second actions would not effectively reverse or negate the orders in the prior actions. Finjan cites *Fujitsu Limited v. Tellabs Operations, Inc.* as an example. No. 13-C-3229, 2013 WL 361810 (N.D. Ill., Jan. 20, 2013). In that case, the court held that a second action alleging infringement based on new products did not represent an impermissible collateral attack on the court's order denying leave to include those new products in amended infringement contentions in an earlier suit. The court in *Fujitsu* reasoned that the earlier court "did *not* rule that Fujitsu Limited was forever barred from suing" based on those claims. *Id.* at *4. A recent Northern District decision has followed *Fujitsu.* In that case, the court held that there was no collateral attack on an earlier opinion where the prior order did not explicitly bar the plaintiff from alleging infringement with respect to new products, even when the prior case was still pending. *Avago Technologies General IP v. Asustek Computer, Inc.*, No. 15-cv-04525-EMC, 2016 WL 1623920, at *2 (N.D. Cal., Apr. 25, 2016).

Here, the court is persuaded that, as far as the collateral attack argument is concerned, the present situation is more similar to *Fujitsu* than to *Icon*. The court does not read the order in *Blue Coat I* denying Finjan leave to amend its infringement contentions with respect to ProxySG, CAS, and MAA to prohibit Finjan from accusing these products in subsequent suits. And there is no concern here regarding reversing or negating the court's order in *Blue Coat I*, as there has been a final judgment on the merits in that suit.

That the present suit is not an impermissible collateral attack on the order in *Blue Coat I*, however, does not mean that Finjan is home free: it may still be precluded from asserting some or all of its new infringement contentions for other reasons, to which the court now turns.

The doctrine of res judicata applies when there is "'(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties.'" *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2001). The parties do not dispute that the second and third elements exist here. For the first element, in the patent infringement context (for which Federal Circuit law governs), claims are identical "when 'the accused device in the action before the court is 'essentially the same' as the accused device in a prior action between the parties that was resolved by a judgment on the merits." *Icon-IP PTY Ltd.*, 2013 WL 10448869, at *3 (quoting *Acumed LLC*

5

*v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008)).[5]  Accused products are essentially the same when "the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *Id.*  The party seeking to apply preclusion bears the burden of showing that the products at issue are essentially the same.  *Id.*

The related doctrine of claim-splitting, a "subspecies" of claim preclusion, may also apply to bar a litigant's claims.  *Icon-IP PTY Ltd.*, 2013 WL 10448869, at *2-3.  Claim-splitting is different from res judicata in that it does not require a final judgment on the merits in the first suit.  *Id.*  But like res judicata, claim-splitting applies when the two products are the same or essentially the same.  *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 13-C-3229, 2013 WL 361810, at *1, 3 (N.D. Ill., Jan. 20, 2013) ("Because the accused products are *exactly* the same in this scenario [despite the plaintiff alleging new infringement *theories*], these claims arise from the same transactional facts and cannot be brought in a separate lawsuit between the same two parties); *Adaptix, Inc. v. Amazon, Inc.*, No. 15-cv-01379-PSG, 2015 WL 4999944, at *11 (N.D. Cal., Aug. 21, 2015) (precluding plaintiff from litigating infringement contentions that were brought or could have been brought in earlier cases).

Blue Coat argues that res judicata should bar each of Finjan's infringement contentions because (1) ProxySG, CAS, MAA, and WebPulse were accused in *Blue Coat I* and there is thus an identity of claims against these products, and (2) Secure Analytics, Global Intelligence Network, Web Security Service, Advanced Security Gateway, and Mail Threat Defense are all "essentially the same" as the products accused in *Blue Coat I* because the accused functionalities in this case are the same as those in the prior case.  Finjan responds that res judicata should not apply because (1) Advanced Security Gateway and Mail Threat Defense are new products that did not exist at the relevant time during *Blue Coat I*, (2) new sandboxing technologies were added into (and are now being accused in) WebPulse and Web Security Service, and (3) ProxySG with CAS and MAA, though asserted in *Blue Coat I*, were not precluded by the court's order in that case.

---

[5] *Acumed* clarifies that a claim for patent infringement is barred by claim preclusion when it "arises from the same transactional facts as a prior action."  *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008).  "[T]wo claims for patent infringement do not arise from the same transactional facts unless the accused devices in each claim are 'essentially the same.'"  *Id.*

6

The court is persuaded that the doctrine prohibiting claim-splitting applies to preclude Finjan's infringement contention against ProxySG and CAS with MAA. This combination of products was accused in *Blue Coat I* (of infringing a patent not at issue in the present motion), and Finjan does not deny that this suit involves the same combination of products. *See* Dkt. No. 106-4, at p. 16. Additionally, the three patents at issue here were also asserted in the prior suit. In fact, the court in *Blue Coat I* denied Finjan leave to amend its infringement contentions to assert these patents against these products because Finjan failed to demonstrate that it acted with diligence. The court's order in *Blue Coat I* suggests that Finjan, had it acted with diligence, *could have* asserted these patents against these products in *Blue Coat I*. Even though no final decision on the merits was reached for these infringement contentions in *Blue Coat I*, no such decision is necessary for claim-splitting to apply.[6] To sum up, with respect to ProxySG and CAS with MAA, the products and patents are exactly the same as those in the first suit, and Finjan could have brought its infringement contentions accusing these products of infringing these patents then. Finjan is thus not entitled to a second bite at this apple, and the court grants Blue Coat's motion to strike as to this infringement contention.

Finjan has also accused "ProxySG and CAS with MAA *or Security Analytics*" in two separate infringement contentions. To the extent that these infringement contentions rely on *only* "ProxySG and CAS with MAA" to allege infringement, Finjan is precluded for the reasons described above. However, as Security Analytics was not accused in the prior suit, and Blue Coat has not proved that it is the same or essentially the same as products accused in the prior suit,[7] Finjan remains free to accuse it, including in combination with products that Finjan could have accused previously. Thus, the court grants-in-part Blue Coat's motion to strike the "ProxySG and

---

[6] *See* Robert A. Matthews, Jr., *6* Annotated Patent Digest § 38:10 (Jan. 2017) ("A denial of a motion to amend can operate as a final judgment on the merits for the claim sought to be added by the proposed amendment, and thereby create claim preclusion if the same claim is sought to be asserted in a latter suit. The theory stems [from] the goal of preventing duplicative litigation of claims that could have been brought in the earlier case.") (citing *Crystal Import Corp. v. AVID Identification Sys., Inc.*, 582 F. Supp. 2d 1166 (D. Minn. 2008) (applying claim preclusion when a prior denial of a motion to amend was based on untimeliness, and ruling that the prior denial operated as a final judgment on the merits)).

[7] Blue Coat's assertion that the previously accused BLADE products are part of Security Analytics does not sufficiently demonstrate that the latter is no more than the sum of the former parts.

1  CAS with MAA or Security Analytics" infringement contentions, but Finjan remains free to
2  accuse "ProxySG and CAS with . . . Security Analytics."  The court grants Finjan leave to amend
3  these two infringement contentions (for the limited purpose of addressing this decision) within 30
4  days of the date of this order.

5        For the remainder of the infringement contentions, the court is not persuaded that res
6  judicata acts as a bar.  Claim preclusion only bars "the particular infringing acts . . . that are
7  accused in the first action or could have been made subject to that action."  *Brain Life, LLC v.*
8  *Elekta, Inc.*, 746 F.3d 1045, 1054 (Fed. Cir. 2014) (quoting *Aspex Eyewear Inc. v. Marchon*
9  *Eyewear, Inc.*, 672 F.3d 1335, 1343 (Fed. Cir. 2012)).  Claim preclusion will not bar claims that
10 could not have been asserted in the prior lawsuit because the acts of infringement had not yet
11 occurred at that time.  *Id.*  These principles apply "even when the products are the same in both
12 suits." *Id.* at 1056.  In the patent context, there is an exception to these rules for adjudged *non-*
13 *infringers*.  Under the *Kessler* doctrine, parties may be precluded from filing suit against a product
14 that has been found *not* to infringe a patent; this allows the non-infringer to avoid "repeated
15 harassment for continuing its business as usual."  *Id.; see also Kessler v. Eldred*, 206 U.S. 285
16 (1907).  *Kessler* does not apply, however, when a product has previously been adjudged to
17 infringe.

18       Finjan cites *Adobe Systems Inc. v. Wowza Media Systems, LLC*, 72 F. Supp. 3d 989 (N.D.
19 Cal. 2014), to support its argument that res judicata does not bar its infringement contentions
20 accusing new products and technologies, and the court finds this case instructive.  In *Adobe*, the
21 plaintiff sued the defendant for patent infringement, and the defendant released a new version of
22 an accused product after final infringement contentions were due.  *Id.* at 991.  The plaintiff filed an
23 expert report involving the new version, but the court held that the infringement contentions "did
24 not reach" the recently released version.  *Id.* at 991-92.  The plaintiff then sued the defendant in a
25 second suit, accusing the newer versions of the product.  *Id.*  The court in the second suit held that
26 res judicata did not bar the plaintiff from accusing the new versions, because the plaintiff "was not
27 attempting to circumvent its own lack of diligence" in the prior suit, but rather "attempting to add
28 to the litigation claims that had accrued following the submission of the infringement

8

contentions." *Id.* at 995. The court noted that res judicata "does not bar the assertion of new rights acquired during the action which might have been, but were not litigated." *Id.*, (quoting *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1345 (Fed. Cir. 2012)).

Advanced Security Gateway was released after the trial in *Blue Coat I*, and the Mail Threat Defense product was released after the close of fact discovery in that litigation. Hannah Decl., Exs. 11, 12. Additionally, Blue Coat introduced a new form of "sandboxing" technology into WebPulse and Web Security Service in March 2015. Hannah Decl., Exs. 13, 14. Expert Discovery in *Blue Coat I* closed on February 27, 2015, before all of these events. 13-cv-03999-BLF, Dkt. Nos. 98, 143. As Finjan did not have the opportunity to accuse the aforementioned products and technologies in the prior suit, and as their alleged infringement was not litigated in the prior suit, under *Brain Life* and *Adobe*, Finjan is not precluded from accusing them now.

Blue Coat's arguments that Finjan should nevertheless be precluded from accusing these products are unavailing. Blue Coat argues that Finjan's "new products" argument fails because Advanced Security Gateway and Mail Threat Defense are "essentially the same" as the previously accused products. As explained above, however, the accused products released after the close of discovery in the prior suit represent new claims that were not previously litigated. *See Lawlor v. Nat'l Screen Service Corp.*, 349 U.S. 322, 327-28 (1955) ("While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."); *Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1054-56 (Fed. Cir. 2014). Additionally, the fact that *Blue Coat I* ended in a finding of infringement makes this case more similar to *Adobe Systems, Inc. v. Wowza Media Systems, LLC*, 72 F. Supp. 3d 989, 995 (N.D. Cal. 2014) (finding that res judicata did not bar a claim against a new product where there had been no prior non-infringement ruling) than to *Adaptix, Inc. v. Amazon, Inc.*, No. 15-cv-01379-PSG, 2015 WL 4999944, at *11 (N.D. Cal., Aug. 21, 2015) (applying res judicata as a bar where there had been a prior non-infringement judgment).[8]

---

[8] *Nystrom*, on which *Adaptix* relies, also involved a prior non-infringement judgment. *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281, 1282, 1284 (Fed. Cir. 2009).

Blue Coat next argues that Finjan's "new technology" argument fails because sandboxing existed in Blue Coat's products prior to the close of fact discovery in *Blue Coat I*. Though Blue Coat asserts that *a* sandboxing functionality existed within its products during *Blue Coat I*, Dkt. No. 118, Finjan argues that the *new* sandboxing functionality inserted into the accused products meets the claim limitations in new ways. At this point in the litigation, the court lacks the information needed to determine if the new sandboxing functionality is essentially the same as the previously existing sandboxing functionality. Regardless, to the extent that the new functionality was added after the close of fact discovery in the prior suit, the court is persuaded that Finjan is not precluded from accusing products that have incorporated the new functionality (i.e., WebPulse and Web Security Service). It would be unjust to preclude Finjan for failing to predict how Blue Coat would combine functionalities in its products in the future.

The court thus determines that Finjan is not precluded from accusing WebPulse, Web Security Service, Advanced Security Gateway, or Mail Threat Defense.

## CONCLUSION

For the reasons stated above, the court grants Blue Coat's motion to strike with respect to some of Finjan's infringement contentions and denies it with respect to others. The infringement contentions and their dispositions are summarized in the following table.

| Patent | Accused Products | Motion to Strike Disposition |
|---|---|---|
| '844 | WebPulse | DENIED |
| | Web Security Service | DENIED |
| | Advanced Security Gateway with the MAA or Security Analytics | DENIED |
| | ProxySG and CAS with MAA or Security Analytics | GRANTED-IN-PART |
| | Mail Threat Defense with the MAA or Security Analytics | DENIED |
| '968 | Web Security Service | DENIED |
| | Advanced Security Gateway with the MAA | DENIED |
| | ProxySG and CAS with MAA | GRANTED |
| '731 | Web Security Service | DENIED |
| | Advanced Security Gateway with the MAA or Security Analytics | DENIED |
| | ProxySG and CAS with MAA or Security Analytics | GRANTED-IN-PART |

10

| | Mail Threat Defense with the MAA or Security Analytics | DENIED |
|---|---|---|

**IT IS SO ORDERED.**

Dated: 2/2/2017

_____
HOWARD R. LLOYD
United States Magistrate Judge