United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

FINJAN, INC.,
Plaintiff,
v.
BLUE COAT SYSTEMS, LLC,
Defendant.

Case No. 15-cv-03295-BLF

**ORDER GRANTING IN PART AND DENYING IN PART BLUE COAT SYSTEMS, LLC'S MOTION TO STRIKE EXPERT REPORTS**

Finjan, Inc. ("Finjan") accuses defendant Blue Coat Systems, Inc. ("Blue Coat") of infringing ten of its web security patents: U.S. Patent No. 8,677,494 ("the '494 patent"); U.S. Patent No. 8,566,580 ("the '580 patent"); U.S. Patent No. 8,079,086 ("the '086 patent"); U.S. Patent No. 8,225,408 ("the '408 patent"); U.S. Patent No. 6,154,844 ("the '844 patent"); U.S. Patent No. 6,965,968 ("the '968 patent"); U.S. Patent No. 7,418,731 ("the '731 patent"); U.S. Patent No. 9,141,786 ("the '786 patent"); U.S. Patent No. 9,189,621 ("the '621 patent"); and U.S. Patent No. 9,219,755 ("the '755 patent") (collectively, "the Asserted Patents"). The Court assumes familiarity with the facts of this case, including the asserted patents and accused products, as discussed in the Court's summary judgment order of July 28, 2017. Before the Court is Blue Coat's motion to strike portions of Finjan's expert reports. Mot., ECF 203. For the reasons stated herein, Blue Coat's motion GRANTED IN PART and DENIED IN PART.

## I. LEGAL STANDARD

This district's Patent Local Rules require both parties to provide early identification of their respective infringement and invalidity theories. *See* Patent L.R. 3-1, 3-3. Once served, the contentions constitute the universe of the parties' respective theories, and those contentions may be amended only by order of the court and upon a showing of good cause. Patent L.R. 3-6.

As has been recognized by many courts, the purpose of these disclosures is to "require parties to crystallize their theories of the case early in the litigation," *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. 1998)), so as to "further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases," *Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, Case No. 10-cv-2037, 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012) (citation and internal quotation marks omitted). "The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro*, 467 F.3d at 1366. A district court has wide discretion in enforcing the Patent Local Rules. *Id*. at 1365-66; *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed.Cir.2005).

## II. DISCUSSION

Blue Coat seeks to strike from Finjan's expert reports: (1) the sections titled "Support for Element [x] of the [y] Patent," which include listings of supporting documents, deposition testimony, and source code, as well as descriptions of testing performed by the expert; and (2) alleged new infringement theories, including that (a) Security Analytics ("SA") in conjunction with Malware Analysis Appliance ("MAA") infringes the '086 patent, (b) SA in conjunction with MAA infringes the '844 patent, (c) SA in conjunction with MAA infringes the '494 patent, and (d) Content Analysis System ("CAS") infringes the '494 patent through its [redacted] database. The Court addresses each in turn.

### A. Supporting Materials Sections

#### i. "Documents," "Deposition Testimony," and "Source Code" Sub-Sections

In each of Finjan's expert reports at issue, a per-element analysis of how the accused products infringe is followed by a section titled "Support for Element [x] of the [y] Patent," which exhaustively lists supporting documents, deposition testimony, and source code which Finjan contends support that claim element. For example, for element 24(d) of the '086 patent, an excerpt from the list of documents reads:

787. A document bates-numbered BC2-1585556-60 supports that this element is



United States District Court
Northern District of California

met by the Accused Products. This document is a PowerPoint presentation entitled "Finjan Competitive." BC2-1585559 references lawsuits Finjan engaged with Websense, WebRoot, McAfee, Symantec and Sophos and states that "BC has no plans to cross over Finjan patent with on-box script/code emulation/analysis, we do it in the cloud."

788. A document bates-numbered BC2-0681521-7 supports that this element is met by the Accused Products. This document is an e-mail threat [sic] among Blue Coat engineers including Tom Clare and Michael Mauch dated April 12, 2010.

789. A document bates-numbered BC2-0679993-4 supports that this element is met by the Accused Products. This document is an e-mail threat involving Blue Coat employees including Tom Clare, Mike Ehlers, Mason Lee, Steven Schoenfeld, Michael Mauch, and Darrell Long. [redacted]

Ex. H ¶¶ 787-89, ECF 205-16. An item in the list of deposition testimony states:

832. Mr. Runald is the Vice President of Product Development at Blue Coat. Runald 2/16/17, 6:8 – 19. [redacted]

*Id.* ¶ 832. An item in the list of source code citations reads:

841. [redacted] supports that this claim element is met and in particular, that the '086 Accused Products provide for a transmitter coupled with said receiver and with said Downloadable scanner, for transmitting the Downloadable and a representation of the Downloadable security profile data to a destination computer, via a transport protocol transmission.

*Id.* ¶ 841.



United States District Court
Northern District of California

Blue Coat argues that this material should be stricken because it is not tied to any analysis and, as such, prevents Blue Coat from understanding the precise nature of Finjan's experts' opinions. Mot. 3-5, ECF 203. Finjan disagrees, pointing out that each listing of supporting documents, deposition testimony, and source code follows a specific per-element analysis, and, as such, the experts' opinion and relevance of the listed citations can be easily ascertained. Opp. 1-4, ECF 212-4.

In *Finjan, Inc. v. Sophos, Inc.*, 2016 U.S. Dist. LEXIS 68128, *48-50 (N.D. Cal. May 24, 2016), Judge Orrick assessed whether to strike a similar listing of citations from Finjan's expert reports. Judge Orrick granted in part and denied in part the motion to strike, reasoning:

> To the extent that Finjan concedes that the source code tables are not sufficient on their own to support "standalone infringement theories," the parties are largely in agreement on this issue. At trial, Drs. Cole and Mitzenmacher may not rely on the tables to articulate new infringement theories not disclosed in their reports. They may, however, rely on those portions of the tables that are specifically identified in their reports. Sophos's motion to strike those portions of the tables is DENIED. Its motion to strike all other portions of the tables is GRANTED.

*Id*. at *50. He further noted that "[b]y 'specifically identified,' I mean discussed or cited in a way that allows a reader to discern, with reasonably certainty and without unreasonable difficulty, the particular portion or portions of the table the expert is referring to." *Id*. at *50 n.8.

The Court agrees with Judge Orrick's reasoning and adopts it here. Finjan may not rely on any document, testimony, or source code excerpt to go beyond the scope of infringement theories specifically articulated in its primary per-element analysis (e.g., Ex. H ¶¶ 693-705, ECF 205-16 for element 24(d) of the '086 patent). Finjan also may not rely on portions of the cited documents, testimony, or source code where it cannot be discerned, with reasonably certainty and without unreasonable difficulty, the portion of the citation to which the expert is referring.

However, unlike the expert reports at issue in *Sophos*, the Court finds that Finjan's expert reports at issue here reasonably comply with the restrictions in Judge Orrick's order. As the examples cited above illustrate, Finjan's lists of documents, testimony, and source code contain specific pincites to the portion of the evidence that the expert finds relevant and summarize the information disclosed. [redacted]



United States District Court
Northern District of California

Ex. H ¶ 787, ECF 205-16. The Court notes that ¶ 788—one of the specific examples highlighted by Blue Coat in its briefing—contains less detail, but this is an outlier (and not enough of one to warrant exclusion). Accordingly, the Court finds that Finjan's lists of documents, testimony, and source code do not obfuscate Finjan's infringement theories, nor is it the case that Blue Coat cannot discern, with reasonable certainty and without unreasonable difficulty, the portion(s) of the citation to which the expert is referring. As such, the Court will not strike the lists documents, deposition testimony, and source code from Finjan's expert reports. It may be that, in a perfect world, Finjan would have interspersed these citations in with its primary per-element analysis; however, Finjan's current structure is also adequate. Blue Coat's motion to strike the lists of documents, deposition testimony, and source code in Finjan's expert reports is DENIED.

**ii. "Testing" Sub-Section**

Finjan's expert reports at issue also contain, in the "Support for Element [x] of the [y] Patent" sections, a "Testing" sub-section, which states that an expert observed a particular functionality. For example, one such section states:

> I confirmed this functionality during the testing of the '844 Accused Products that they receive Downloadables for processing. In one example, I was able to observe a URL being sent to WebPulse/GIN for processing. In another example, I observed the ASG and SA will both receive Downloadables for processing. I next observed these systems passing the Downloadable to a MAA for further analysis.

Ex. G ¶ 364, ECF 205-14. Blue Coat argues that all of these "Testing" sub-sections should be stricken because they are insufficient to assess the integrity of the asserted testing, including test conditions used, methodology, the nature of the results, or other related information. Mot. 5-6, ECF 203. Finjan responds that these sections are sufficiently detailed. Opp. 5, ECF 212-4.

The Court decided a similar issue in *Blue Coat I*. *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 4272870, at *3-4 (N.D. Cal. July 14, 2015). As was the case there, Blue Coat's challenge is not so much to the reliability of Finjans' experts' testing as it is to the sufficiency of their disclosures of that testing. Federal Rule of Civil Procedure 26 requires a disclosed expert to provide an expert report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). "The purpose of the expert

disclosure rule is to 'provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (quoting *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008)). Both of Finjan's experts have disclosed their testing methodology, including screenshots taken at various steps. Ex. G ¶¶ 28-29, ECF 205-14; Ex. H ¶¶ 53-56, ECF 205-16. Further, both experts sat for deposition, where Blue Coat had the opportunity to question them about their testing. For these reasons, the Court finds that exclusion is not warranted. Blue Coat's motion to strike the "Testing" sub-sections is DENIED.

**B. New Infringement Theories**

Patent Local Rule 3-1 provides that a party claiming patent infringement must serve a disclosure of asserted claims and infringement contentions that addresses "[s]eparately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware." Patent L.R. 3-1(b). "The identification shall be as specific as possible." *Id.* The patentee must further provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." *Id.* at 3-1(c).

"[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)); *see also Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-CV-01647-YGR(JSC), 2015 WL 335842, at *4 (N.D. Cal. Jan. 26, 2015). While "[i]nfringement contentions serve as substitutes for interrogatories, [ ] they also act as forms of pleading that disclose the parties' theories of their case and thereby shape discovery and the issues to be determined at trial." *Apple Inc. v. Samsung Electronics Co.*, No. 12-CV-0630-LHK PSG, 2013 WL 3246094, at *3 (N.D. Cal. June 26, 2013). "Parties accordingly need not 'prove up' their theories by providing evidence beyond the material they have at the time they make their contentions." *Id.*; *see also AntiCancer,*

*Inc. v. Pfizer, Inc.*, 769 F.3d 1323, 1338 (Fed. Cir. 2014) (a patentee's infringement contentions "do not need to include proof or direct evidence of infringement"). The dispositive inquiry in a motion to strike is thus whether the allegedly undisclosed "theory" is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the "theory" is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation. *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011); *see also Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, No. C 10-2037 LHK PSG, 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012). If the theory is new, prejudice is "inherent in the assertion of a new theory after discovery has closed." *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-CV-02243-JST, 2014 WL 709865, at *15 n.7 (N.D. Cal. Feb. 23, 2014).

Blue Coat asserts that Finjan is advancing several theories of infringement that were not identified in its Patent Local Rule infringement contentions served April 28, 2016 and were instead disclosed for the first time in Finjan's expert reports served nearly a year later. The Court agrees, in part.

United States District Court
Northern District of California

**i. Security Analytics (SA) in Conjunction with Malware Analysis Appliance (MAA) ('086 Patent)**

Blue Coat contends that Finjan disclosed, for the first time in its expert reports, that SA in conjunction with MAA infringes the '086 patent. Mot. 6-7, ECF 203. Finjan's expert report lists "Blue Coat's Security Analytics products (SA) in conjunction with MAS" as one of the "'086 Accused Products." Ex. H ¶ 30, ECF 205-16. However, neither Finjan's cover pleading nor its infringement contentions charts identify SA as accused. Ex. A at 4, ECF 205-4 (cover pleading identifying only "WebPulse cloud-based system, Global Intelligence Network, Web Security Service cloud-based system" as accused instrumentalities); Ex. D at 1, ECF 205-10 (chart identifying only "Blue Coat's WebPulse cloud-based system ('WebPulse'), including Blue Coat's 'Global Intelligence Network'" as "the accused product"); Ex. E at 1, ECF 205-12 (chart identifying only "Blue Coat's Web Security Service (WSS) a cloud-based system" as "the accused product"). Finjan does not dispute that SA is not explicitly identified as an accused product, but

nevertheless argues that its infringement theory regarding SA is sufficiently disclosed. Opp. 9, ECF 212-4.

The Court agrees with Blue Coat that Finjan's assertion of SA in conjunction with MAA is a new infringement theory. The Patent Local Rules "require specific identification of products and do not allow for accusations by implication." *Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF, slip op. (N.D. Cal. Dec. 1, 2015). By failing to specifically identify SA (or, for that matter, MAA) as an accused product in its infringement contentions, Finjan has done precisely that. Although it is true—as Finjan pointed out in the hearing—that the '086 infringement contention charts mention SA in passing, Ex. D at 86, ECF 205-10, this is not enough to put Blue Coat on notice that it is an accused product. Accordingly, the Court STRIKES the portions Finjan's expert's opinion that assert SA in conjunction with MAA infringes the '086 patent.

**ii. Security Analytics (SA) in Conjunction with Malware Analysis Appliance (MAA) ('844 Patent)**

Blue Coat contends that Finjan also disclosed for the first time in its expert reports that SA in conjunction with MAA infringes the '844 patent. Mot. 7-8, ECF 203. Finjan's expert report lists "Blue Coat's Security Analytics products (SA) in conjunction with MAA" as one of the "'844 Accused Products." Ex. G ¶ 20, ECF 205-14. Finjan's cover pleading and infringement contentions charts identify "Security Analytics appliances" as accused. Ex. A at 3, ECF 205-4 (cover pleading identifying "Security Analytics appliances" as an accused instrumentality); Ex. B at 1, ECF 205-6 (chart identifying "Advanced Security Gateway appliances . . . and ProxySG appliances . . . with . . . Malware Analysis appliances ("MAA Products") and/or Security Analytics appliances" as "the accused product"). Blue Coat does not dispute this, but nevertheless contends that Finjan's theory is new because Finjan's expert report takes the position that SA, removed from its previous combination with ASG, infringes every element of the asserted claims, whereas Finjan's infringement contentions only briefly identify SA as one way Blue Coat's products "link[] . . . the first Downloadable security profile to the Downloadable . . . ." Mot. 7-8, ECF 203. Finjan disagrees, arguing that its expert report merely advances the same theory as its infringement contentions. Opp. 8-9, ECF 212-4.



United States District Court
Northern District of California

The Court finds that, even though Finjan identified SA as accused in its infringement contentions, part of the theory that it advances in its expert report is new. Finjan's expert report identifies SA as an "inspector" that can "receiv[e] . . . a Downloadable," as recited in claim 1(b):

> The ASG with MAA and/or SA performs systems for downloading and inspecting Downloadables because they receive Downloadables for dynamic processing. . . . [redacted]

Ex. G ¶ 273, ECF 205-14; *see also id.* ¶ 378 ("The . . . SA transfer[s] Downloadables to a MAA for analysis."). Finjan's expert report also states that, after a potentially suspicious file has been analyzed, SA "link[s] the results from the MAA Sandbox to the Downloadable . . ." in alleged satisfaction of claim 1(d). *Id.* ¶ 570. In contrast, Finjan's infringement contentions only identify SA as a recipient of analysis results, which happens as a part of one way the accused products "link[] . . . the first Downloadable security profile to the Downloadable . . .":

> [redacted]

Ex. B at 13, ECF 205-6. This is a substantive shift, as the SA in Finjan's infringement contentions is only a back-end handler of analysis results, whereas the SA in Finjan's expert report is also a front-end recipient of a Downloadable. Accordingly, the Court STRIKES the portions of Finjan's expert report that disclose that SA "receive[s] . . . a Downloadable." The portions of Finjan's expert report that disclose that SA "link[s] . . . the first Downloadable security profile to the Downloadable . . ." are not stricken.

**iii. Security Analytics (SA) in Conjunction with Malware Analysis Appliance (MAA) ('494 Patent)**

Blue Coat contends that Finjan disclosed, for the first time in its expert reports, that SA in conjunction with MAA infringes the '494 patent. Mot. 8-9, ECF 203. Finjan's expert report lists "SA in conjunction with the MAA" as one of the "'494 Accused Products." Ex. G ¶ 22, ECF 205-14. Finjan's cover pleading and infringement contentions charts identify "Security Analytics appliances" as accused. Ex. A at 3, ECF 205-4 (cover pleading identifying "Security Analytics



United States District Court
Northern District of California

appliances" as an accused instrumentality); Ex. C at 1, ECF 205-8 (chart identifying "Advanced Security Gateway appliances and ProxySG appliances . . . with . . . Malware Analysis appliances ("MAA Products") and/or Security Analytics appliances" as "the accused product"). Blue Coat does not dispute this, but, similar to the '844 patent, argues that Finjan's theory is new because it identifies SA (in conjunction with MAA) as something that can separately infringe the '494 patent, whereas its infringement contentions only identify it as something that infringes as part of a broader combination of appliances, which include an ASG and/or ProxySG. Mot. 8-9, ECF 203. Finjan disagrees, arguing that its infringement contentions explicitly disclose that SA and MAA infringe the '494 patent. Opp. 6-8, ECF 212-4.

The Court agrees with Finjan that its identification of SA in combination with MAA as infringing the '494 patent is not a new theory. Similar to the '844 patent, Finjan's expert report identifies the SA as something that plays a role both before and after "security profile data" is "deriv[ed]:" on the front end, it "receiv[es] an incoming Downloadable" as recited in claim 10(b), [redacted] ¶ 1290 ("The . . . SA . . . feed[s] downloaded web content into a MAA for analysis and processing."); on the back end, it "stor[es] the Downloadable security profile data in a database," *id.* [redacted] However, as was not the case with the '844 patent, Finjan's infringement contentions also disclose that the SA performs these functions. Ex. C at 44, ECF 205-8 ("the Security Analytics Products act as a receiver"); *id.* at 57 ("ASG Systems will store Downloadable security profile data in a database by . . . communicating results to security analytics from Solera (i.e. Security Analytics)."). Accordingly, Finjan's infringement contentions give adequate notice of the theory disclosed in Finjan's expert reports. Blue Coat's motion to strike is DENIED as to theories of SA in conjunction with MAA infringing the '494 patent.

**iv. [redacted] Component of CAS ('494 Patent)**

Blue Coat asserts that Finjan disclosed, for the first time in its expert report, that [redacted] Mot. 9-10, ECF 203. Finjan disagrees, arguing that its infringement contentions disclose the same allegedly infringing functionality [redacted]. Opp. 9-10, ECF 212-4.

The Court agrees with Blue Coat that [redacted] is a new theory. Finjan's expert report identifies [redacted]

> [redacted]

> [redacted]

Ex. G ¶¶ 1491-92, ECF 205-14. Finjan's infringement contentions do not specifically mention [redacted]. *See generally* Ex. C, ECF 205-8. Instead, they parrot a claim term—"database"—and then, in elaborating on that term, refer exclusively to a local cache or "file hash database" which stores hashes of files that have already been analyzed:

> Furthermore, ASG Systems include a database in the CAS Products, which cache the results of the sandbox dynamic analysis performed in ASG Systems. CAS Products store the files using a hash or checksum of the file, the originating URL, or a task or sample ID. As shown below, the CAS Products will store the result of the sandbox dynamic analysis in how it performs Intelligent Pre-Filtering and Efficient Sandboxing . . .
>
> The security profile cache for storing the security profiles derived by the scanner, wherein each of the security profiles is indexed in the security profile cache by a file identifier associated with a corresponding file stored in the file cache is also shown by the Content Analysis System which performs "malware scanning via ICAP or ICAPS" and "one or more sandboxing appliances, including the Malware Analysis Appliance" where the Content Analysis System will "first check the local file hash database to see if the file has already been analyzed.) When sandboxing is complete, the result goes to the Content Analysis System. If the file is malicious, the Content Analysis System updates the local cache – the file hash database – and tells the ProxySG to block all subsequent requests to the same object. It also updates the Global Intelligence Network with the object's URL, file hash, timestamp and filename. . . .

Ex. C at 60-62, ECF 205-8. Read in its entirety, this portion of Finjan's infringement contentions

United States District Court
Northern District of California

only discloses the local cache as an allegedly infringing "database." *See id.*

Finjan does not dispute that the local cache is a different component from [redacted]. *See* Opp. 9-10, ECF 212-4; *see also* Ex. G ¶¶ 565, 572, 1130, ECF 205-14. Instead, its rebuttal is simply that the functionality disclosed for the cache in its infringement contentions—storing the results of the sandbox dynamic analysis performed by the MAA—is the same as the functionality disclosed for [redacted] in its expert report. *Id.* This is unpersuasive. As an initial matter, Finjan describes the shared functionality at too high a level of generality. "Storing the results of the sandbox dynamic analysis performed by the MAA" is a high-level feature that could possibly encompass a number of components on the CAS (including, by Finjan's own admission, the local cache and [redacted]). Simply disclosing this functionality does not give Blue Coat notice as to which component is specifically accused of infringing.[1] Moreover, the salient point is not whether any similarities exist between the infringement contentions and the expert report, but whether there is enough such that Blue Coat was able to know, from the infringement contentions, where to look to defend itself against Finjan's infringement claims. Such was not the case here. By describing a "database . . . which cache[s] the results of the sandbox dynamic analysis" and "store[s] the files using a hash or checksum of the file, the originating URL, or a task or sample ID," Finjan sent Blue Coat only looking to the local cache. Ex. C at 60-61, ECF 205-8. This is a different place than [redacted] Ex. G ¶¶ 1491-92, ECF 205-14. Accordingly, Finjan's infringement contentions do not provide adequate notice that [redacted] is accused of infringement. The Court STRIKES Finjan's theory that [redacted] is an

[1] At the hearing, Finjan represented that [redacted] was an internal component, which it did not discover until after infringement contentions were served. The Court recognizes that a party's initial infringement contentions will not have perfect clairvoyance into the internal workings of an accused product, particularly when relevant discovery has yet to be taken. Nevertheless, Patent L.R. 3-6(c) provides for amendment of infringement contentions in the case of "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." Finjan did not seek to amend its infringement contentions to include [redacted]. It cannot now substitute this omission with silent additions to its expert report.

infringing “database” in the asserted claims of the ’494 patent.

## III. CONCLUSION

For the foregoing reasons, Blue Coat’s motion to strike is GRANTED with respect to Finjan’s new infringement theories that (1) SA in conjunction with MAA infringes the ’086 patent; (2) SA in conjunction with MAA infringes the ’844 patent; and (3) [redacted] is an infringing “database” in the asserted claims of the ’494 patent. The remainder of Blue Coat’s motion is DENIED.

**IT IS SO ORDERED.**

Dated: July 28, 2017

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California