1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**NORTHERN DISTRICT OF CALIFORNIA**

6

**SAN JOSE DIVISION**

7

8  FINJAN, INC.,

Case No.  15-cv-03295-BLF

9             Plaintiff,

10        v.                                                      **ORDER REGARDING MOTIONS *IN LIMINE***

11  BLUE COAT SYSTEMS, LLC,

[Re: ECF 290–299]

12             Defendant.

13

14        Plaintiff Finjan, Inc. ("Finjan") asserts that Defendant Blue Coat Systems, LLC ("Blue

15  Coat") infringes eight of its web security patents: U.S. Patent No. 8,677,494 ("the '494 patent");

16  U.S. Patent No. 8,079,086 ("the '086 patent"); U.S. Patent No. 8,225,408 ("the '408 patent"); U.S.

17  Patent No. 6,154,844 ("the '844 patent"); U.S. Patent No. 6,965,968 ("the '968 patent"); U.S.

18  Patent No. 7,418,731 ("the '731 patent"); U.S. Patent No. 9,189,621 ("the '621 patent"); and U.S.

19  Patent No. 9,219,755 ("the '755 patent") (collectively, "the Asserted Patents").  Joint Pretrial

20  Statement, ECF 289.  This Order addresses the parties' motions *in limine*.  For the reasons

21  explained below and on the record at the hearings held on October 5–6, 2017, the motions are

22  decided as follows:

23        Finjan's Motion *in Limine* No. 1: DENIED.

24        Finjan's Motion *in Limine* No. 2: DENIED.

25        Finjan's Motion *in Limine* No. 3: GRANTED.

26        Finjan's Motion *in Limine* No. 4: DENIED.

27        Finjan's Motion *in Limine* No. 5 (Daubert): DENIED IN PART and DEFERRED IN

28        PART.

United States District Court
Northern District of California

Blue Coat's Motion *in Limine* No. 1 (Daubert): GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

Blue Coat's Motion *in Limine* No. 2: DEFERRED.

Blue Coat's Motion *in Limine* No. 3: GRANTED IN PART and DENIED IN PART.

Blue Coat's Motion *in Limine* No. 4: GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

Blue Coat's Motion *in Limine* No. 5: GRANTED IN PART and DENIED IN PART.

## I.    FINJAN'S MOTIONS *IN LIMINE*

### A.    Finjan's Motion *in Limine* No. 1 to preclude discussion of irrelevant information. DENIED.

Finjan moves to exclude Blue Coat from introducing at trial (1) patents owned by Symantec, which acquired Blue Coat in 2016, (2) patents and references that Blue Coat's invalidity expert intends to testify about at trial as "background" information, and (3) payments made to experts outside the context of this litigation. MIL No. 1 at 1, ECF 290. On the first issue, Finjan argues that whether Blue Coat has its own patents is irrelevant because that does not make it immune from infringing Finjan's patents and that introducing such information will only confuse the jury. *Id.* at 2–3. Finjan also contends that Blue Coat has not properly disclosed any witness who would testify about Symantec's and Blue Coat's patents. *Id.*

In response, Blue Coat argues that its patent portfolio is relevant to rebut Finjan's allegation of willful infringement. Opp. No. 1 at 1, ECF 315. Blue Coat asserts that its witness Mr. Schoenfeld has "general knowledge of Blue Coat's patents" and that it disclosed that he may testify about "Blue Coat's history and research and development" and "Blue Coat's acquisition and licensing," where the patents are relevant to its background story. *Id.* at 2.

On the second issue, Finjan seeks to exclude discussion of references that Dr. Prakash mentioned as "Technical Background" because Blue Coat did not list them as asserted prior art and thus they are "not part of any invalidity theory." *Id.* at 4.

Blue Coat counters that Dr. Prakash has "no intention to use background references to

opine on invalidity of specific claim limitations" and courts have allowed parties to use undisclosed references to show the background of the art. *Id.* at 4–5.

Regarding the third issue, Finjan argues that information regarding payment made to experts should be excluded as "prejudicial, misleading" with little probative value and disclosure of such information would violate the experts' "Constitutional rights of privacy." *Id.* at 5.

Blue Coat responds that (1) compensation is relevant to a witness' bias and (2) experts who are not Finjan's employees have no right of privacy. *Id.* at 3–4.

The Court DENIES this motion as to the first issue because discussing a company's patents as part of an overview of what the company does is helpful to the jury. Blue Coat shall limit the description of its or Symantec's patents to a high level background on the company and what it does. While the patents themselves will not be allowed to be admitted as evidence, Blue Coat may use some display to show the jury what business it is engaged in. With respect to the references that Dr. Prakash discusses generally regarding background of the art, the Court DENIES this motion as it is appropriate for experts to discuss references at a high level for background purposes. Prior art references not tied to invalidity contentions will not be admitted as evidence. As for the third issue, the Court DENIES this motion because payments made to experts are relevant on the issue of bias.

**B.    Finjan's Motion *in Limine* No. 2 to preclude evidence of purported government sales.  DENIED.**

Relying on the Federal Rules of Civil Procedure 37, Finjan seeks to preclude Blue Coat from presenting any evidence, testimony, or argument regarding a defense under 28 U.S.C. § 1498.  MIL No. 2 at 1, ECF 300-6.  This section allows a defense against patent infringement if the use of the infringing product was "for the Government" and was "with the authorization or consent of the Government."  *See id.*  Finjan argues that such a defense must be excluded because Blue Coat's response to Interrogatory No. 11 regarding § 1498 was insufficient and amounted to a failure to comply with discovery obligations.  *Id.* at 2.  According to Finjan, Blue Coat's response identified 6,500 pages under Rule 33(d) but failed to point out which documents showed the federal government's authorization or consent.  Finjan argues wholesale "incorporation by

3

reference" of various documents did not provide sufficient notice on the § 1498 defense.  *Id.* at 2–3.  Finally, Finjan contends that Blue Coat's 30(b)(6) witness did not provide any specific information regarding the matter, thus allowing the §1498 defense would be prejudicial under Rule 403.  *Id.* at 4.

In response, Blue Coat argues it produced spreadsheets that "include detailed sales information by product, identify the distributors and resellers who sold the product, and identify the end customer for the product, such as ███████████████████████████████ ████████████████████████████████ among others."  Opp. No. 2 at 2, ECF 332-1. According to Blue Coat, the spreadsheets demonstrate that it made sales to more than 30 different federal government agencies.  *Id.*  Moreover, Blue Coat asserts that it identified letters that indicate certain sales were authorized by the federal government and that its reliance on Rule 33(d) was proper.  *Id.* at 2–3.

The Court DENIES this motion as brought under Rule 37 because the spreadsheets and documents provided in response to the interrogatory request were sufficient to put Finjan on notice of the defense.  Also, the Court DENIES this motion as brought under Rule 403.  The documents are highly probative on the issue of government sales, and Finjan has not shown any prejudicial effect.  That the purported government sales may reduce damages does not mean they are prejudicial to Finjan.

### C.   Finjan's Motion *in Limine* No. 3 to preclude reference to pending litigations and PTO proceedings.  GRANTED.

Finjan seeks to exclude argument or evidence on co-pending lawsuits that have not reached a jury verdict.  MIL No. 3 at 1–2, ECF 292.  It argues that, although those lawsuits involve Finjan, the lawsuits are irrelevant because they involve different defendants and different accused products while causing a risk of confusing the jury.  *Id.* at 2.  For similar reasons, Finjan seeks to exclude argument or evidence on co-pending PTO *inter partes* review ("IPR") proceedings where no final written decision or denial of institution has been rendered.  *Id.* at 3.

Blue Coat responds that IPR results, whether interim or final, should be excluded. Opp. No. 3 at 1–3, ECF 317.  Regarding co-pending lawsuits, Blue Coat argues that the existence of

1    other litigation should be allowed to be introduced for damages purposes so far as it relates to

2    Finjan's "litigation practices—in particular, its past and current practices in enforcing patent rights

3    and licensing those rights." *Id.* at 1.

4         Regarding co-pending lawsuits, the Court GRANTS this motion.  As a starting point, Blue

5    Coat shall not introduce argument or evidence on co-pending lawsuits that have not reached a jury

6    verdict.  However, Blue Coat may request to revisit this issue in rebuttal to evidence submitted by

7    Finjan because the lawsuits may be relevant under narrow circumstances.  On the issue of IPR

8    proceedings, the Court GRANTS this motion because the parties agree that no co-pending

9    proceedings should be introduced.  The Court presumes that Finjan intends to live by the

10   limitations it proposed, thus both Finjan and Blue Coat shall be precluded from introducing any

11   argument or evidence on co-pending IPR proceedings where no final written decision or denial of

12   institution has been rendered.

13        As for IPR proceedings where a final written decision or denial of institution has been

14   issued, the parties reached to an agreement during oral argument on Blue Coat's motion *in limine*

15   no. 3.  Oct. 6th Oral Arg. Tr. 58:24–59:8, ECF 344.  The parties agree to allow Finjan to introduce

16   final written decisions for limited purposes, i.e., rebutting invalidity and prior art references, but

17   not institution decisions regardless of whether the PTO granted or denied institution.  *Id.*  Blue

18   Coat represents that it will not introduce evidence regarding any IPR proceeding.  *See, e.g.*, Opp.

19   No. 3 at 1–3.

20   **D.    Finjan's Motion *in Limine* No. 4 to exclude evidence regarding usage data.
         DENIED.**

21        Finjan moves to preclude Blue Coat from presenting evidence, testimony, or argument

22   regarding usage data of the accused products as being prejudicial.  MIL No. 4 at 1, ECF 300-8.

23   According to Finjan, Blue Coat stated in response to Interrogatory Nos. 8 and 23 that it did not

24   have information on the number of files scanned or threats detected by the accused products.  *Id.*

25   at 1.  Inconsistent with this response, Finjan argues, Mr. Wood (Blue Coat's Chief Scientist for the

26   Security Analytics product) provided such information to Mr. Thomas (Blue Coat's damages

27   expert), who then relied on that information in his expert report.  *Id.* at 2.  Finjan also contends

28

United States District Court
Northern District of California

1    that Blue Coat "affirmatively represented that there was no witness available to be disposed"

2    regarding the usage information and thus it did not have a fair opportunity to depose Mr. Wood

3    regarding the usage statistics.  *Id.* at 3.

4          In response, Blue Coat argues that the purported inconsistencies are due to the fact that

5    Finjan changed the infringement theory over time.  Opp. No. 4 at 2, ECF 332-3.  Specifically,

6    Blue Coat explains that it has information on traffic sent from "SA to MAA" but not information

7    on "MAA to SA."  *Id.* at 1–2.  It contends that its response was proper because Finjan's theory at

8    the time the interrogatories were served required "MAA to send a report to SA," which

9    information it does not have.  *Id.* at 1–3.  Moreover, Blue Coat asserts that the statistics relied on

10   by Mr. Thomas is a calculated "maximum possible usage" and *not* "actual usage," the number

11   requested by Finjan.  *Id.* at 3.

12         The Court DENIES this motion.  The Court is satisfied that Blue Coat properly responded

13   to discovery requests when made and under infringement theories propounded by Finjan.  To the

14   extent that such theories have changed, Blue Coat should have modified its responses.  However,

15   any prejudice to Finjan can be cured by allowing Finjan to depose Mr. Wood before trial.  Blue

16   Coat shall make Mr. Wood available for deposition in the San Francisco Bay Area at a reasonable

17   time.  To the extent that the deposition results in an adjustment in Finjan's expert report, the

18   parties shall meet and confer to address the issue.  If new information is discovered, the Court will

19   allow limited modification to the expert report.

20   **E.      Finjan's Motion *in Limine* No. 5 (Daubert) to exclude testimony of Mr. Vincent Thomas.  DENIED IN PART and DEFERRED IN PART.**

21         Finjan brings a *Daubert* motion to exclude Mr. Thomas from offering unreliable opinions

22   at trial.  MIL No. 5 at 1–2, ECF 300-4.  Specifically, Finjan seeks to exclude his opinion on four

23   issues: (1) calculation of damages based on terminal disclaimers; (2) improperly discounting

24   revenues; (3) excluding purported government sales from the royalty base; and (4) apportioning

25   the royalty base to 1% of total product revenues.

26         The Court addresses each issue separately.

27

28

United States District Court
Northern District of California

### i.   Calculation of damages based on terminal disclaimers

Finjan challenges Mr. Thomas' method of (a) grouping the Asserted Patents based on terminal disclaimers and (b) using the earliest hypothetical negotiation date from each group and applying that date to all patents in that group.[1]  First, it argues that this method is factually implausible because the first date of infringement (i.e., the hypothetical negotiation date) would be before some patents issued.  *Id.* at 2.  Second, Finjan contends that the method improperly treats different patents as a single invention.  *Id.* Third, Finjan asserts that the method fails to properly calculate damages when multiple patents are infringed.  *Id.* at 3.

Blue Coat responds that grouping patents avoids multiple recoveries for the same invention.  Opp. No. 5 at 1, ECF 332-5.  It explains that Mr. Thomas relied on (a) terminal disclaimers as indicators that certain patents are not patentably distinct and (b) conversations with Dr. Nielson (Blue Coat's technical expert) to determine which patents to group together.  *Id.* at 1–2.  Also, Blue Coat points out that using "the same hypothetical negotiation date for a patent group" is supported by the fact that Finjan's licenses cover applications not issued at the time the they were executed.  *Id.* at 3.

The Court finds that grouping per se is not a problem.  However, the method to vary hypothetical dates depending on what patents are found to be infringed can deflate the proper award for damages and confuse the jury. As the parties indicated that they could agree on the hypothetical negotiation dates, Finjan and Blue Coat shall meet and confer to do so.  Accordingly, the Court DEFERS ruling on the motion regarding the calculation of damages based on terminal disclaimers.

### ii.   Improper discounting of revenues

Finjan argues that Mr. Thomas improperly discounted damages back to his hypothetical negotiation dates instead of discounting to their present day value.  One flaw, Finjan points out, is that he discounted damages back to dates before the period Finjan seeks damages.  MIL No. 5 at 3.

Blue Coat counters that Mr. Thomas' method is proper as evidenced by the fact that

---

[1] Mr. Thomas placed the '494 and '086 patents into a "DSP group" and the '621 and '755 patents into a "Sandboxing group."  *Id.* at 1.

United States District Court
Northern District of California

1  Finjan's general licensing practice discounts back to the date of the license.  Opp. No. 5 at 4.  It

2  points out Dr. Meyer admits that royalties should be "discounted back to the date of the

3  hypothetical negotiation."  *Id.*  During oral argument, Finjan explained that this statement was an

4  inadvertent error because Dr. Meyer actually discounted to a date later than the hypothetical

5  negotiation dates.  Oct. 6th Oral Arg. Tr. 10:15–23.

6      The Court first notes the hypothetical negotiation is an artifice that asks the jury to put

7  themselves at a fictional table and find what the parties would have done.  And some courts have

8  accepted that an award for prejudgment interest can make up for the loss of the use of the money,

9  which was not paid out at the hypothetical negotiation date.  *See Comcast IP Holdings I LLC v.*

10 *Sprint Commc'ns Co., L.P.*, 850 F.3d 1302, 1314–15 (Fed. Cir. 2017).  On the second day of

11 argument on this motion, the Court expressed reservations about its previous conclusion that

12 Finjan had the better argument.  Since Finjan's lead counsel had been excused from attending the

13 second session, the Court DEFERS ruling on whether the discount dates should be the

14 hypothetical negotiation dates or December 16, 2016 because, Finjan has not had the full

15 opportunity to present its arguments based on the Court's new concerns.  The parties shall revisit

16 this issue during the jury instruction conference on October 25, 2017.  The parties are also

17 requested to be prepared to discuss the effect on the starting date of prejudgment interest in the

18 event that Blue Coat's position is accepted by the Court regarding the discount date.

19      **iii.    Excluding purported government sales from the royalty base**

20      As for the purported federal government sales, Finjan argues that Mr. Thomas' sole

21 reliance on Blue Coat's sales spreadsheets was impermissible because those sheets do not contain

22 information on whether the sales were made upon express or implied consent of the government.

23 MIL No. 5 at 4.

24      Blue Coat counters that Mr. Thomas' opinion addresses the impact of its affirmative

25 defense on damages and the jury should decide whether the defense stands.  Opp. No. 5 at 5.

26      The Court DEFERS ruling on this issue because it is unclear at this time whether there will

27 be sufficient evidence for the jury to consider the affirmative defense.  If there is such evidence,

28 Mr. Thomas will be allowed to give testimony on the value of the government sales.  This issue

will be revisited during the trial.

### iv.    Apportioning the royalty base to 1% of total product revenues

Finjan asserts that Mr. Thomas relied on insufficient information to calculate a 1% apportionment for certain accused products.  MIL No. 5 at 5.  Specifically, according to Finjan, his report is unreliable because he (a) used traffic statistics that excluded relevant file types (e.g., pdf, doc, xls), (b) failed to explain why the tracked 30-day period is representative of typical usage of the accused products, and (c) relied on a single nine hour period to estimate the percentage traffic flow from "WSS through CAS to MA."  *Id.* at 5–6.

During oral argument, Blue Coat explained that Mr. Thomas based his opinion on composite results of four tests to cross check the accuracy of the traffic data.  Oct. 5th Oral Arg. Tr. 78:15–81:13, ECF 343.  For example, in one instance, Blue Coat contends that it tracked percentage traffic over a thirty-day period during the normal course of business, and this result was nearly identical to test data collected over a nine hour period.  Opp. No. 5 at 6.  It also points out one test that included pdf and doc files showed a similar result.  *Id.* at 7; Oct. 5th Oral Arg. Tr. 79:19–80:1.

The Court DENIES this motion on the issue of apportioning the royalty base. First of all, testing traffic over a thirty-day period is a reasonable time.  While Finjan points out potential deficiencies in some tests, such as excluding certain types of files or testing over a nine hour period, Blue Coat represents that Mr. Thomas relied on four separate tests that support each other and those tests were produced to Finjan.  The consistency between the tests indicates that the potential deficiencies do not render the underlying premises of his opinions unreliable.  Whether those opinions are credible is another matter.  If Finjan wishes to challenge Mr. Thomas' opinions, cross-examination is the proper vehicle to do so.


## II.    BLUE COAT'S MOTIONS *IN LIMINE*

### A.    Blue Coat's Motion *in Limine* No. 1 (Daubert) to exclude testimony of Dr. Christine Meyer.  GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

Blue Coat brings a *Daubert* motion to exclude several methods used by Dr. Meyer.  MIL

United States District Court
Northern District of California

No. 1 at 1, ECF 305-3.  Specifically, Blue Coat seeks to exclude her opinion on three issues: (1) estimation of the royalty base; (2) royalty rate of 8–16%; and (3) kickers and checks.

The Court addresses each issue separately.

### i.  Estimation of the royalty base

Blue Coat raises several issues on Dr. Meyer's calculation of the royalty base.  First, pointing to ¶ 143 n.433 in Dr. Meyer's report, Blue Coat argues that she double-counted features for which Finjan already recovered damages in *Finjan, Inc. v. Blue Coat Systems, Inc.*, No. 13-cv-03999-BLF (N.D. Cal.) ("*Blue Coat I*").  MIL No. 1 at 1–3.  Second, according to Blue Coat, Dr. Meyer improperly relied on estimated WebPulse revenue despite the fact that it provided actual revenue information to Finjan.  *Id.* at 3.  Third, Blue Coat contends that Dr. Meyer's opinion that damages should be based on worldwide WebPulse revenue is unsupported.  *Id.* at 4.

As for the first issue on double-counting, Finjan responds that it did not assert the WebPulse features of ███████████████ "Yara," ███████ "Intelligence APIs," and "FRS" in *Blue Coat I*, and thus could not have recovered damages as to those features.  Opp. No. 1 at 2, ECF 323-4.  As for the other asserted features "recent malware," "malware metadata," ████████████ and "DRTR," Finjan argues that it could not have recovered damages for those features in *Blue Coat I* because Blue Coat added new functionality to WebPulse in 2015.  *See id.*  On the second issue, Finjan states that Dr. Meyer relied on actual fiscal year 2016 revenues and therefore her method is reliable.  *Id.* at 3.  Regarding the third issue, Finjan argues that Dr. Meyer properly included worldwide revenue because Blue Coat develops and maintains WebPulse in the United States and also domestically pushes out updates for worldwide use.  *Id.* at 4.

The Court DEFERS ruling on this motion regarding the double-counting issue because, the parties at this time have not made clear the relation between the purported new features in this case and the features that were subject to damages calculation in *Blue Coat I*.  To be clear, Finjan cannot recover damages for any revenue that was already captured as damages in *Blue Coat I*.  The parties shall address this issue and point to support in the record on October 25, 2017.

The Court GRANTS this motion on the issue of Dr. Meyer's estimation of WebPulse

1    revenue.  Blue Coat represents that, in estimating this revenue, Dr. Meyer relied on a corporate

2    presentation that defines GIN as Webfilter and Intelligent Services.  MIL No. 1 at 3.  It also

3    represents that Finjan received documentation of the actual revenue for all relevant years for

4    Webfilter and Intelligent Services.  *Id.*  As such, Dr. Meyer should base her calculation using the

5    actual revenue instead of "imput[ing]" revenue as stated in ¶ 134 of her report.  Dr. Meyer may

6    adjust her calculations to reflect consideration of actual revenue.

7          Finally, the Court DEFERS ruling on this motion regarding the issue of whether Dr. Meyer

8    properly considered worldwide WebPulse revenue.  Blue Coat argues that *Microsoft Corp. v.*

9    *AT & T Corp.*, 550 U.S. 437 (2007) supports its position.  Oct. 5th Oral Arg. Tr. 119:22–120:12.

10   The Court, however, is uncertain at this time whether *Microsoft*'s underlying reasoning is

11   applicable to this case.  In *Microsoft*, the Supreme Court contemplated whether Microsoft

12   infringed under 35 U.S.C. § 271(f) when a master version of Windows was sent abroad on a disk

13   or via electronic transmission.  550 U.S. at 442.  Hence, *Microsoft* dealt with the meaning of

14   § 271(f), but Finjan represents that it is not asserting that section.  Oct. 5th Oral Arg. Tr. 121: 18–

15   24.  That said, setting aside the issue of § 271(f), *Microsoft* explained that, because AT & T

16   asserted an "apparatus" patent claim, infringement could occur only after Windows copies were

17   installed on computers.  550 U.S. at 441–42.  That case did not reach the issue of whether software

18   transmitted abroad and directly installed on foreign computers[2] constitute infringement under 35

19   U.S.C. § 271(a), which the Court presumes to be the section Finjan relies on.  At this time, it is

20   unclear how Finjan intends to prove that WebPulse infringes the Asserted Patents under § 271(a)

21   and what evidence will be presented to support Finjan's purported entitlement to worldwide

22   WebPulse revenue.  For example, the parties have not briefed where the systems claimed in the

23   Asserted Patents are located.  Even if it were assumed that Blue Coat developed WebPulse in the

24   United States, that does not necessarily mean Finjan would be entitled to worldwide revenue.  The

25   entitlement depends on the precise nature of the patent claims asserted by Finjan and how those

26

27   _____

     [2] In *Microsoft*, the master disk or electronic transmission sent abroad were never installed on
28   foreign-made computers.  550 U.S. at 442.  Instead copies made abroad were used for installation.
     *Id.*

United States District Court
Northern District of California

claims are infringed.  Thus, Dr. Meyer may not base her damages opinions on worldwide sales until substantial evidence supporting infringement under § 271(a) is proffered.  Further, it may be appropriate to modify the verdict form to ask the jury to determine this factual issue.

### ii.   Royalty rate of 8–16%

Blue Coat argues that Dr. Meyer should be limited to opining on a royalty rate of 6–8%. MIL No. 1 at 5.  In other words, it seeks to exclude Dr. Meyer's reliance on a 16% royalty rate on the basis that none of the jury verdicts in *Blue Coat I*, *Sophos*,[3] and *Secure Computing*,[4] and none of Finjan's license or settlement agreements support a 16% royalty rate.  *Id.*  In particular, Blue Coat argues that *Secure Computing* is inapplicable because the royalty rates were based on the "25 percent rule of thumb," which has been rejected by the Federal Circuit.  *Id.*

Finjan responds that its past patent licenses include rates consistent with 8–16%.  Opp. No. 1 at 5–6.  As for *Blue Coat I*, *Sophos*, and *Secure Computing*, Finjan argues that the jury verdicts from those cases support Dr. Meyer's use of an 8–16% royalty rate.  *Id.* at 5.  In particular, Finjan asserts that the rate in *Blue Coat I* was 6–16% when estimated based on an $8 per user rate.  *Id.*

The Court first notes that *Secure Computing* has been criticized, particularly by the Federal Circuit, on the use of the 25 percent rule of thumb.  Although *Secure Computing* was affirmed on appeal and that jury did not award a 25 percent royalty, the Court is concerned that the verdict is sufficiently tainted by what the Federal Circuit describes as a "fundamentally flawed tool," *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011), such that the *Secure Computing* verdict can no longer be admitted to support a reasonable damages opinion.  That case shall not be relied on for establishing a royalty rate.  However, even with the exclusion of the *Secure Computing* verdict, the Court is satisfied that Dr. Meyer's royalty rate opinion is supported by other admissible evidence and on that basis, the motion is DENIED.  Dr. Meyer may reformulate her opinion based on other allowed evidence, and it may be the case that she continues to opine that the proper royalty rate is 8–16%.  In particular, Finjan may rely on *Blue Coat I* and *Sophos* to establish a royalty rate because those cases did not directly rely on the rejected 25

---

[3] *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO (N.D. Cal.).
[4] *Finjan Software Ltd. v. Secure Computing Corp.*, No. 6-cv-00369-GMS (D. Del.).

1  percent rule of thumb.

2        **iii.   Kickers and checks.**

3        Blue Coat argues that Dr. Meyer's calculation relies on unsupported kickers and checks.

4  MIL No. 1 at 6.  First, it contends that her calculation is based on a purely speculative growth

5  scenario in view of Symantec's acquisition of Blue Coat.  *Id.*  Second, according to Blue Coat, Dr.

6  Meyer's "reasonableness check" is unreliable because she uses the $8 per user fee that is solely

7  based on Finjan's "view of the world."  *Id.*  Finally, Blue Coat asserts that Dr. Meyer's opinion

8  about a bargaining range for the hypothetical negotiation is incomplete.  *Id.* at 7.

9        According to Finjan, Dr. Meyer conducted a comprehensive analysis of growth rates based

10  on Symantec's presentation and third-party analysts' reports.  Opp. No. 1 at 6.  Regarding the $8

11  per user fee, Finjan argues that Dr. Meyer provided sufficient support as shown by her example

12  calculating the fee using the 8–16% rate and a typical $50 security software product that has a

13  2.5 year subscription.  *Id.* at 6–7.  Finally, Finjan contends that Dr. Meyer properly disclosed the

14  basis for her opinions regarding the bargaining range.  *Id.* at 7.

15        The "kicker" issue is first addressed.  During the October 5th hearing, the Court indicated

16  that it was inclined to deny the motion on this issue.  After reviewing the parties' arguments,

17  submitted exhibits, and discussion on Blue Coat's motion *in limine* no. 5, the Court modifies its

18  ruling to place limitations on Dr. Meyer's opinions.  Insofar as Dr. Meyer relied on the total

19  revenue information without consideration of the projected growth for the accused products, her

20  opinion is excluded.  However, it appears Dr. Meyer may have considered internal Symantec

21  documents related to projected growth of "SWG, Cloud WSS, PoxySG/WSS," which Finjan

22  asserts to be accused products.  Opp. No. 1 at 6; Ex. 16 to Lee Opp. Decl., ECF 325-1.  Hence, to

23  the extent she can rely on the projected growth of accused products with sufficient evidentiary

24  support to form her opinions, Dr. Meyer may proffer such opinions.  Accordingly, the Court

25  DENIES the motion on the "kicker" issue but limits Dr. Meyer's opinions to insure the evidence

26  she relies on relates to the accused products.  She may clarify her opinions to confirm that she has

27  relied on the projected growth of accused products.

28        Regarding the bargaining range issue, MIL No. 1 at 7, the Court DEFERS ruling on the

United States District Court
Northern District of California

13

1    motion for lack of adequate briefing which consisted of three lines of briefing.

2         Finally, the Court DENIES the motion on the issue of Dr. Meyer's "reasonableness check."

3    Dr. Meyer relies on the jury verdict in *Blue Coat I*, which is a valid verdict.  Therefore, she does

4    not base her opinion solely on Finjan's view of the world.  If the Federal Circuit issues an opinion

5    on *Blue Coat I*, the parties may revisit this issue.

### B. Blue Coat's Motion *in Limine* No. 2 to exclude evidence and argument concerning alleged copying.  DEFERRED.

6

7         Blue Coat moves to exclude Finjan from introducing all argument and evidence—in

8    particular, the 2002 OEM Agreement for SurfinGate—relating to alleged copying as irrelevant and

9    highly prejudicial.  MIL No. 2 at 1, ECF 296.  Blue Coat argues that the purported evidence shows

10   only competition between the parties and not copying.  *Id.* at 2.  It notes, based on identical

11   documents submitted in *Blue Coat I*, the Court found that Finjan had no evidence of copying

12   Finjan's Vital Security product.  *Id.* at 2–3.  In addition, Blue Coat contends that Finjan misuses

13   the documents by having experts rely on them to opine on Blue Coat's subjective intent.  *Id.* at 4–

14   5.

15        Finjan responds that it has new evidence of Blue Coat's copying that did not exist in *Blue*

16   *Coat I*.  Opp. No. 2 at 1, ECF 323-6.  It argues that while Blue Coat points to "*some* similar

17   documents" presented in *Blue Coat I*, those documents along with new evidence point to copying

18   and not mere competition.  *Id.* (emphasis in original).  According to Finjan, the copying evidence

19   is relevant to nonobviousness, willful infringement, and damages, and is not highly prejudicial.

20   *Id.* at 3–5.

21        This motion is construed narrowly—Blue Coat is not requesting to exclude certain

22   documents at this time but rather seeks to preclude Finjan from introducing documents as

23   "copying" evidence.  The Court first notes that "copying requires evidence of efforts to replicate a

24   specific product."  *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010).  Knowledge

25   of patents is not enough.  *See Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325

26   (Fed. Cir. 2004). At the hearing, it was unclear what kind of evidence Finjan intended to introduce

27   at trial to show that Blue Coat copied Finjan's products (e.g., SurfinGate, Vital Security) and

28

United States District Court
Northern District of California

14

1   whether those products practiced the invention(s) claimed in the Asserted Patents.  The Court

2   invited supplemental briefing.  That briefing is not yet complete.  Thus, the Court DEFERS ruling

3   on this motion until after Blue Coat submits its response.  If it is deemed that oral argument is

4   necessary, the Court will allow the parties to argue this issue on October 25, 2017.

5        On Blue Coat's final point, experts will not be allowed to opine on the mental state of

6   others.

7        **C.    Blue Coat's Motion *in Limine* No. 3 to exclude evidence and argument**
        **concerning irrelevant proceedings.  GRANTED IN PART and DENIED IN**
8        **PART.**

9        Blue Coat moves to exclude final results from other legal proceedings as being highly

10   prejudicial, misleading, and confusing to the jury.  MIL No. 3 at 1, ECF 297.  First, Blue Coat

11   argues that the result in *Blue Coat I*, which involved different patents, is irrelevant to invalidity,

12   infringement, and damages in this case.  *Id.* at 2–3.  It notes that on the appeal in *Blue Coat I*, "the

13   Federal Circuit criticized Finjan's arguments relating to damages at oral argument."  *Id.* at 2.

14   Second, Blue Coat contends that verdicts in other Finjan cases (e.g., *Secure Computing*, *Sophos*)

15   have no probative value because they involved different parties, patents, and accused products.  *Id.*

16   at 3–4.  Third, Blue Coat seeks to exclude evidence of PTO proceedings due to a high risk of

17   misleading the jury.  *Id.* at 4–5.

18        Finjan counters that it does not seek to introduce verdicts in prior cases to prove validity or

19   infringement.  Opp. No. 3 at 1, ECF 328.  Rather, it argues that these verdicts are relevant to

20   damages and willful infringement.  *Id.* at 2.  Regarding *Blue Coat I*, Finjan asserts that the verdict

21   in that prior case is relevant to damages because three of the eight Asserted Patents overlap and it

22   is probative on the issue of willful infringement.  *Id.* at 2–3.  As for other prior cases, Finjan

23   argues that (1) the *Secure Computing* verdict is relevant to damages because it involved patents

24   related to the Asserted Patents and (2) the *Sophos* verdict is probative on damages as that case

25   involved two patents asserted in this case.  *Id.* at 3–4.  Lastly, Finjan argues that the PTO decisions

26   "denying institution of IPRs and . . . upholding the validity of asserted claims in five of the

27   Asserted Patents" are highly probative on validity because Blue Coat seeks to assert the same prior

28   art references presented before the PTO.  *Id.* at 5.

United States District Court
Northern District of California

United States District Court
Northern District of California

The Court DENIES the motion to the extent it seeks to exclude the *Blue Coat I* verdict in relation to damages and willful infringement because that case is highly probative of these issues. The Court GRANTS the motion regarding *Blue Coat I* as to other purposes.  Finjan will not be allowed to introduce *Blue Coat I* for other purposes, particularly in relation to invalidity and infringement.  Blue Coat may offer a proposed limiting instruction to this effect.

The Court next turns to *Sophos* and clarifies the October 6th ruling.  Blue Coat argues that that prior case has no probative value, particularly on the issues of infringement and damages. MIL No. 3 at 4.  In response, Finjan presents that it will not introduce *Sophos* to prove infringement or validity.  Opp. No. 3 at 1.  Finjan further argues *Sophos* is relevant to damages because that case involved two patents which are included in the Asserted Patents.  *Id.* at 4.  In light of these arguments, the Court finds that the *Sophos* verdict is probative on damages because the patents asserted in *Sophos* and in this case relate to the same technology field.

Also, while Finjan does not specifically refer to *Sophos*, it generally argues that prior cases are relevant to the issue of willful infringement.  *Id.* at 2.  Blue Coat does not specifically argue that *Sophos* is irrelevant or prejudicial on that issue.  Given these representations, the Court finds the *Sophos* verdict to be probative of willful infringement because that case involved two patents of the Asserted Patents, but observes no risk of prejudice on this issue.

Accordingly, the Court DENIES the motion to the extent the *Sophos* verdict is used to show damages and willful infringement.  Finjan, however, will not be allowed to introduce the *Sophos* verdict to argue infringement and validity.

Although Blue Coat does not specifically refer to willful infringement, it argues that *Secure Computing* has "no relevance to any issue . . . and will cause unfair prejudice."  MIL No. 3 at 4.  On the other hand, Finjan does not assert that *Secure Computing* involved any of the Asserted Patents.  Hence, the Court does not observe any probative value of the *Secure Computing* verdict on proof of willful infringement.  Therefore, the Court GRANTS the motion to exclude the *Secure Computing* verdict for purposes of willful infringement.

For damages purposes, on discussing Blue Coat's motion *in limine* no. 1, the Court has ruled that Finjan's expert may not rely on the *Secure Computing* verdict to opine on the final

United States District Court
Northern District of California

1  royalty rate because that verdict is tainted by the 25 percent rule.  That ruling applies here.  In

2  other words, experts shall not rely on the *Secure Computing* verdict to opine on the final royalty

3  rate.  On the other hand, the Court will allow fact witnesses to discuss the award in *Secure*

4  *Computing* as it relates to a basis for their starting point of the royalty rate negotiation.

5  Accordingly, the Court GRANTS the motion to exclude as to experts relying on the *Secure*

6  *Computing* verdict and DENIES the motion as to fact witnesses discussing the verdict.

7      On the PTO proceedings, the parties reached an agreement during oral argument. Oct. 6th

8  Oral Arg. Tr. 58:24–59:8.  Based on the parties' representations, the Court rules that Finjan may

9  introduce final written decisions of IPR proceedings only to the extent the decisions are used to

10  rebut invalidity and prior art references.  As Finjan agrees to limit introducing the evidence to final

11  written decisions, it shall not introduce IPR institution decisions regardless of whether the PTO

12  granted or denied institution.  *Id.*  Accordingly, the Court GRANTS the motion as to excluding

13  institution decisions and DENIES the motion as to excluding final written decisions.  As for Blue

14  Coat, it represents that it will not introduce evidence regarding any IPR proceeding.  *See, e.g.*,

15  Blue Coat's Opp. No. 3 at 1–3, ECF 317.

16      **D.  Blue Coat's Motion *in Limine* No. 4 regarding irrelevant agreements.**
      **GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.**

17   Blue Coat moves to preclude various technology license agreements for not being

18  comparable to the hypothetical license at issue.  MIL No. 4 at 1, ECF 305-5.  Specifically, it

19  argues that (1) the fifteen-year-old OEM Agreement between Finjan and Blue Coat has no nexus

20  to the Asserted Patents and (2) Finjan's expert, Dr. Meyer, admitted that the Microsoft agreement

21  was "fundamentally different than the hypothetical license between Finjan and Blue Coat."  *Id.*

22  at 2. Blue Coat also contends that numerous settlement agreements are not comparable to the

23  hypothetical license at issue and those documents would only mislead the jury.  For support, it

24  points to Dr. Meyer's statement that she "[does] not believe that the settlement agreements in this

25  matter tend to indicate an established royalty rate . . . as contemplated by the *Georgia Pacific*

26  factors."  *Id.* at 3–5.

27      Finjan counters that the OEM Agreement is probative of the relationship between Finjan

28

17

and Blue Coat and of the "considerations the respective parties had at the time of the hypothetical negotiation."  Opp. No. 4 at 2, ECF 323-8.  As for the Microsoft agreement, Finjan argues that the agreement is "probative of Finjan's development of its patented technology and third party interest in it."  *Id.*  Regarding its license and settlement agreements, Finjan argues that these agreements cover the Asserted Patents and thus are probative of secondary considerations of nonobviousness and the *Georgia Pacific* factors 1–4.  *Id.* at 3–4.

The Court addresses each agreement bearing in mind that agreements must be viewed critically because they may be tainted due to external factors such as threatened or actual litigation.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) ("The notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of *Georgia–Pacific*. . . .").

First, during oral argument, Blue Coat made clear that it does not seek to exclude the M86 and Trustwave agreements.  Those agreements were made outside the litigation process and thus were not subject to the coercive environment of patent litigation. Ex. 1 to Brewer Decl. in Support of Blue Coat's Motions *In Limine* ("Brewer Decl.") ¶ 111, ECF 305-11; Oct. 6th Oral Arg. Tr. 61:7–13.

Second, the Court will allow the Microsoft license agreement to be introduced as evidence. This agreement was made outside the litigation process and thus not tainted by the threat of litigation. Ex. 1 to Brewer Decl. ¶ 111.  Although Dr. Meyer stated that the Microsoft agreement was not informative as to the hypothetical license, *id.*, she pointed out that the agreement was informative for other purposes (e.g., considering Finjan's licensing practice regarding the Excluded Entity provision), *id.* ¶ 123.  Blue Coat may cross-examine her on this issue at trial. Thus, the Court DENIES the motion as to the Microsoft agreement.

Third, the Court excludes the Intel settlement agreement.  This agreement was formed to

██████████████████████████████████████████████

Ex. 88 to Brewer Decl., ECF 305-31.  Also, the agreement sets forth a settlement amount of

██████████████████████████████████████████████

██████████████████████████████████████████████

United States District Court
Northern District of California

*LaserDynamics*, 694 F.3d at 78 (rejecting a lump sum license fee that was six times larger than the next highest amount paid for a license to the patent-in-suit).  Blue Coat, however, agrees that the agreement may be relevant to issues of patent validity.  Oct. 6th. Oral Arg. Tr. 78:23–79:6  For these reasons, the Court GRANTS the motion as to the Intel agreement for all purposes except for arguing validity as a rebuttal.

Fourth, the Court finds that the other ten agreements at issue— ████████  Websense, ██ ████████████████  Proofpoint, ████████████████  and Sophos[5] agreements[6]— are settlement agreements that were subject to the coercive environment of patent litigation.

Four of those agreements specifically identify one or more active lawsuits and state that they are entered into to resolve litigation: the ████████  Websense, Proofpoint, and Sophos agreements.  Exs. 89–90, 94, 98 to Brewer Decl.  ████████████████████████ ████████████████████████████████████████ ████████████████████████████████  Ex. 98 to Brewer Decl.  Because those agreements were formed during active litigation, they cannot be assumed as "voluntary agreement[s] between a willing licensor and a willing license."  *LaserDynamics*, 694 F.3d at 77.  In other words, the settlement amounts of those agreements cannot be presumed to demonstrate what willing parties would have agreed to in a hypothetical negotiation.  *Id.*

████  other agreements provide that they are formed under the threat of litigation: ██████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████████████[7]  Exs. 92–93, 95–97 to Brewer Decl.

Out of the ten agreements, ████████████████████████████ ████████████████████  However, Dr. Meyer notes that this agreement was "████████████

---

[5] Sophos Ltd. and Finjan formed an agreement on March 30, 2017.  Ex. 87 to Brewer Decl., ECF 305-30.  This agreement is different from the *Sophos* verdict.
[6] These agreements are Exs. 89-98 to Brewer Decl., ECF 305-32 to -41.
[7] It appears that the ████████████████  does not mention resolving future claims.

United States District Court
Northern District of California

████████████████████████████████████████████████████" Ex. 1 to

Brewer Decl. ¶ 83, similar to the situation where ████████████████████████

██████████████████ and obtained settlement agreements, *id.* ¶¶ 85, 88, 92, 94.  Thus, ████

██████████████ was also tainted by threat of litigation.  Dr. Meyer agrees.  *Id.* ¶¶ 109–110

████████████████ Websense, ████████████████████████████████████████

████████████ licenses all arose from either litigation or the threat of litigation.").

        "[L]icense fees negotiated in the face of a threat of high litigation costs may be strongly

influenced by a desire to avoid full litigation" and "should not be considered evidence of an

established royalty."  *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir.

1983) (citation omitted) (internal quotation marks omitted).  Given that the ████████████

████████████████████████████████ were made to avoid threatened litigation,

the Court critically views those agreements.

        Based on the above discussion and after reviewing the ten agreements, the Court finds that

they are not comparable regarding the dollar amount of licensing for purposes of determining the

royalty rate because, they were formed against the backdrop of actual or threatened litigation.

Indeed, Dr. Meyer does not believe that "the settlement agreements . . . tend to indicate an

established royalty rate in the industry" or "are comparable in the sense of determining a

reasonable royalty."  Ex. 1 to Brewer Decl. ¶ 110.  She, however, stated that the agreements are

probative insofar as they demonstrate Finjan's general approach of licensing.  *Id.* ¶¶ 110, 119–120.

Moreover, Dr. Meyer indicates that many of the settlement agreements involve licensing Finjan's

patent portfolio as opposed to a few patents.[8]  Given Dr. Meyer's statements, the Court clarifies

the October 6th ruling and will not allow Finjan's experts to rely on the agreements to show the

dollar amount of licensing and for purposes of establishing a royalty rate.  The Court, however,

finds that the ten agreements are comparable to the Asserted Patents in a sense that they relate to

the same technology.  Accordingly, the Court GRANTS the motion as to the amount of settlement

and royalty rate deduced from such amount in the ten agreements and DENIES as to other

---

[8] For example, such agreements include the ████████████████████████████

████████████████████ *Id.* ¶¶ 78, 84, 87, 89, 91, 93.

United States District Court
Northern District of California

1    information contained therein.[9]

2        Finally, regarding the OEM Agreement, Blue Coat seeks to exclude this agreement for

3    purposes of evaluating the hypothetical negotiation.  While the parties do not contend that the

4    agreement was formed against the backdrop of litigation, Finjan agrees that Dr. Meyer did not rely

5    on the OEM Agreement for her damages calculation.  In light of these representations, the Court

6    GRANTS the motion as to the OEM Agreement.  While the document will not be allowed to be

7    introduced as evidence, it can be discussed by witnesses regarding the background relationship

8    between Finjan and Blue Coat.  The Court DEFERS on deciding whether the OEM Agreement

9    could be introduced for other purposes such as for evidence of copying.

10       **E.    Blue Coat's Motion *in Limine* No. 5 to exclude irrelevant financial information
             and certain damages arguments.  GRANTED IN PART and DENIED IN PART.**

11

12       Blue Coat seeks to exclude undisclosed damages theories and speculative damages

13   arguments.  MIL No. 5 at 2, ECF 305-7.  It also requests to exclude damages arguments that seek

14   more than a reasonable royalty.  *Id.* at 2–3.  According to Blue Coat, Finjan has only adequately

15   disclosed "a reasonable royalty based on feature apportionment."  *Id.* at 3–4.  As such, Blue Coat

16   contends that Finjan should be allowed to advance only this theory and using any other new

17   theories would be highly prejudicial.  *Id.* at 4.  In addition, Blue Coat argues that Finjan should not

18   be allowed to introduce (1) Symantec's acquisition price of Blue Coat and (2) Blue Coat's overall

     revenue because Finjan has accused only a subset of Blue Coat's products.  *Id.* at 5.

19

20       Finjan counters that the "law stands that that a reasonable royalty is the *minimum* measure

21   of damages for patent infringement" and thus Blue Coat has no legal support for its position.  Opp.

22   No. 5 at 1, ECF 330 (emphasis in original).  *Id.*  Finjan argues that it "fully disclosed its theories

23   of damages" in its initial disclosures and that it is not restricted to expert testimony to prove

24   damages.  *Id.* at 2.  Regarding the financial information, Finjan contends that (1) financial

25   information on Symantec's acquisition of Blue Coat is highly relevant as it relates to various

26   ─────────────────────

27   [9] Blue Coat states that Finjan entered into a settlement agreement with ▉▉▉▉▉▉▉ after expert
     reports were served and that this agreement is not included in Dr. Meyer's report but listed on
     Finjan's exhibit list.  MIL No. 4 at 3 n.4.  During oral argument, Blue Coat did not seek to exclude
28   the Avira agreement.  It may raise a trial objection if Finjan intends to introduce this agreement in
     an improper manner.

United States District Court
Northern District of California

*Georgia Pacific* factors and (2) Blue Coat's overall revenue is relevant to the renegotiation of the hypothetical license following the acquisition. *Id.* at 3–5.

The Court first notes that the motion states Finjan has identified about 1,200 trial exhibits, 8 expert witnesses, and 27 fact witnesses. Insofar as Blue Coat is moving to have Finjan better identify its exhibits and witnesses, the Court DENIES the motion on this issue because this is not the appropriate time to address that aspect of Blue Coat's argument.

Next, the Court turns to the issue of limiting Finjan's damages theory to only a reasonable royalty based on feature apportionment. During oral argument, Blue Coat agreed that a fact-based damages theory may be proper. Oct. 6th Oral Arg. Tr. 94:10–12. As such, here, Blue Coat is actually arguing that Finjan should not be allowed to argue a damages number that lacks sufficient evidentiary support. Accordingly, the Court DENIES the motion on this issue to the extent that Blue Coat seeks to exclude theories that are supported by the evidence in the record. To be clear, Finjan's arguments on damages shall be limited to monetary amounts that are directly related to evidence submitted by experts and fact witnesses.

Regarding the financial information, the Court rules as follows. First, on the Symantec's acquisition price, the Court GRANTS the motion to exclude such information because it has no probative value and is highly prejudicial. Finjan fails to establish probative value as there is no indication that the acquisition price shows how Symantec valued the technology that allegedly infringed the Asserted Patents.

Second, the Court GRANTS the motion to exclude information on Blue Coat's overall revenue *across all products*. In arguing this issue, the parties dispute the application of *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012). After reviewing that case, the Court is convinced that the prejudicial effect of introducing Blue Coat's overall revenue outweighs any probative value. To be sure, the issue presented in *LaserDynamics* was different than what is at dispute here—there the court was evaluating the use of the entire market value rule and the rejected "overall revenue" was that of an accused product (i.e., laptop computers), not necessarily for all products made by the infringer. *See id.* at 67–68. Despite this difference, the Court finds that *LaserDynamics'* underlying concern is applicable to this case.

United States District Court
Northern District of California

Admission of overall revenues that have no demonstrated correlation to the value of the patented features only serves "to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for infringement.'" *Id.* at 68 (citations omitted).  Finjan has not shown sufficient correlation between Blue Coat's overall revenue and the Asserted Patents to support a high probative value that would outweigh the accompanying high risk of prejudice.

### III.   OTHER ORDERS

Following discussion with the parties at the October 5th and 6th hearings, the Court orders as follows:

1.  **By no later than October 25, 2017**, the parties shall stipulate to the hypothetical negotiation date for each of the Asserted Patents.

2.  **On October 25, 2017**, the parties shall address the issue of double-counting features that were subject to damages calculation in *Blue Coat I*.  The parties shall point to specific evidence in the record to support their positions.

3.  **On October 25, 2017**, the parties shall address the issue of whether the discount dates should be the hypothetical negotiation dates or December 16, 2016.

4.  **On October 25, 2017**, the parties shall address the issue of copying evidence, unless the Court issues a ruling in advance.

5.  Blue Coat shall make Mr. Wood available for deposition in the San Francisco Bay Area at a reasonable time.

**IT IS SO ORDERED.**

Dated:  October 18, 2017

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

23